573 A.2d 1035

### In re ADOPTION OF T.M.F.

**Appeal of S.F., Mother of
T.M.F.**

Superior Court of Pennsylvania.

Argued June 19, 1989.
Filed March 30, 1990.

600

Kingsley A. Jarvis, Norristown, for appellant.

Susan P. Gantman, Norristown, for Children and Youth Services, participating party.

John H. Martin, III, Norristown, for Tiffany Fuehrer, participating party.

Before CIRILLO, President Judge, and CAVANAUGH, BROSKY, ROWLEY, MONTEMURO, BECK, TAMILIA, POPOVICH and JOHNSON, JJ.

TAMILIA, Judge:

Tiffany Marie Fuehrer, subject of the termination of parental rights proceedings now before this Court en banc, was born on February 17, 1983 to appellant Susan Marie Fuehrer. Appellant challenges the termination of her parental rights to Tiffany. She argues her counsel was ineffective and that she is, in fact, entitled to effective assistance of counsel in the same manner in which criminal defendants are afforded new effective counsel when original counsel is ineffective to the extent a defendant's rights are prejudiced. Appellant urges that like criminal defendants she should be given an opportunity for a new trial with effective counsel.

A summary of the circumstances surrounding Tiffany's life is necessary to fully understand the gravity of the situation which led to the drastic remedies of termination of

parental rights and placement of Tiffany in foster care with plans for adoption at a later date.

The Montgomery County Office of Children and Youth Services (hereinafter OC & Y) first began its lengthy contact with Tiffany and her family in October 1985 when an anonymous phone call, indicated appellant was prostituting and appellant and Tiffany's father were shooting heroin. The call precipitated an investigation of the home appellant was then sharing with Tiffany. At that time appellant denied drug and prostitution involvement and the matter was determined to be an unjustified neglect referral (T.T. 1/19/88, pp. 80–81). On March 19, 1986, however, appellant, apparently under the influence of drugs, went to OC & Y and requested services. Soon thereafter, on March 25, 1986, T.M.F. was placed in a foster home at the request of R.Z., the putative father who contacted OC & Y the day before asserting he could no longer handle caring for T.M.F., who had been left with him by appellant mother. This placement was agreed to by appellant who signed a voluntary placement agreement on April 8, 1986.[1] Ziegler also signed an agreement transferring custody of T.M.F. to OC & Y.

The trial court's Opinion aptly describes the attempts at rehabilitating appellant, an admitted drug addict since age 12, and appellant's lifestyle since T.M.F. placement.

> Since that time, respondent has engaged in one drug treatment or detoxification program after the other. She has consistently failed to follow through with any of these programs. Her residences have been numerous and temporary. She has engaged in prostitution. Most importantly to the issue at hand, is the fact that she has allowed [T.M.F.] to become the victim of sexual abuse.

> The month following [T.M.F.] being placed in an OC & Y foster home, pursuant to the voluntary placement

1. Caseworker Joyce Roff testified her first meeting with appellant was April 3, 1986. At that time, appellant participated in an intake interview. Her speech was slow and slurred and she kept "nodding out." She admitted she was addicted to codeine and valium and also drank (T.T. at 81).

agreement signed by respondent, respondent entered a detoxification program at Eagleville Hospital. This program is designed for a minimum of 28 days' inpatient care; however, respondent left after four days. Thereafter, respondent was referred to the Norristown Life Center for therapy and a drug treatment program. She was later referred to Norristown Life Center on two additional occasions; however, as on the first referral, she failed to comply with their drug treatment plan and Norristown Life Center requested that she not be referred there again.

From February 20, 1987, until February 25, 1987, respondent was at the Giuffre Medical Center for drug detoxification; however, she refused their rehabilitation program. From April 13, 1987, until April 17, 1987, respondent detoxed at Brandywine Detox Center and was transferred to the Eagleville Hospital drug rehabilitation program. From August 23, 1987, until August 28, 1987, respondent was in Valley Forge Detoxification Unit. Upon her discharge from this unit, she was to enter Programs in Counseling partial hospitalization program, but did not do so. On September 23, 1987, respondent was to enter Giuffre Medical Center; on October 1, 1987, she was to enter Rolling Hills Hospital; and, on October 14, 1987 the Montgomery County Methadone Clinic. OC & Y never received any verification of her participation in these latter programs. Additionally, respondent has consistently refused to attend Alcoholics Anonymous or Narcotics Anonymous meetings.

Respondent has been advised on numerous occasions that the only hope for her regaining custody of T.M.F. is that she overcome her drug and alcohol abuse problems. She has promised on numerous occasions that she will attack the problems, but has failed in every instance to do so.

Respondent has lived at numerous addresses, on a temporary basis, with various relatives and friends. It was while living at 1019 Swede Street that she was

permitted unsupervised visits in her apartment with T.M.F. Unhappily, during [T.M.F.] first and only overnight visit on May 28, 1986, a case of child sexual abuse was indicated [to be discussed further, *infra*].

Slip Op., Stefan, J., 1/21/88, pp. 20–21.

■ Under any standard suggested by appellant, ineffectiveness of counsel could not be a basis for reversal in this case.

OC & Y has established by overwhelming evidence that the requirements of 23 Pa.C.S. § 2511(a)(1), (2), (5) and (b)[2] for termination of parental rights have been met. In defense, the appellant would offer evidence by an expert that at some indefinite time in the future there is a possibility of rehabilitation. This offer of proof must be measured against the facts that the child has been in foster care since

2. **§ 2511. Grounds for involuntary termination**

(a) **General rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

. . . .

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parents are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

(b) **Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.

March of 1986, appellant has been a drug user and/or addicted since age 12 and the appellant has failed in completing at least eight rehabilitation programs and is presently not drug free. Under these circumstances, the mandate of section 2511(b) comes into play, "(b) Other considerations—The court in terminating the rights of a parent shall give primary consideration to the needs and welfare of the child."

The statement of questions, as posed by appellant, presents the dual question as to effective assistance of counsel and whether there was sufficient evidence to show there was no possibility that S.F. could correct her drug addiction and be a fit mother to raise her daughter. Put another way, the question may be stated that if the evidence was so convincing and overwhelming that, pursuant to statute, termination of parental rights was mandated, may ineffectiveness of counsel be a basis for setting aside that finding? Stated in that fashion, the question must be answered in the negative.

Our analysis begins with the assumption that ineffectiveness of counsel is a relevant consideration within the context of a termination hearing. By statute and pursuant to the finding of *Santosky v. Kramer,* 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982), the Supreme Court held due process requires that before parental rights can be terminated the state must support its allegations by at least clear and convincing evidence. In *Lassiter v. Department of Social Services,* 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981), the Supreme Court held the Due Process Clause does not require the appointment of counsel for indigent parents in every parental status termination proceeding. The central question raised in *Kramer* and *Lassiter* is a reprise of the theme expounded in *In re Gault,* 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967); *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 358 (1970); and *McKeiver v. Pennsylvania,* 403 U.S. 528, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971).

Essentially, that theme espouses the principle that in delinquency, dependency or adoption cases involving children, the constitutional provisions, rules and laws designed to govern proceedings in adult criminal or civil actions are not necessarily applicable or desirable. Underlying this consideration is the belief that despite some misgivings about shortcomings in these types of proceedings, there was a retained belief that such proceedings were not purely adversarial and that traditional concepts of Parens Patriae, and the focus on the unity of the family and the best interest of the child, were sufficiently important to avoid hindering the court with procedural and technical limitations. The court could thereby focus a greater degree of its energies and resources in bringing about family unity and rehabilitation.

With this background in mind, we approach the issue of how and when ineffectiveness of counsel can be raised and considered in the context of a termination proceeding.

Pennsylvania statutes do not require counsel in termination proceedings, although Pennsylvania case law does, *In re Adoption of R.I.*, 455 Pa. 29, 312 A.2d 601 (1973), and flowing from this it is presumed that counsel would and should be effective. The central question then is how this issue may be raised and measured. Subsidiary to that question is whether the criminal rules and law developed to guide that procedure are applicable to the resolution of that issue. For a number of reasons we hold they are not.

While a termination proceeding is adversarial in the sense that it places the state in opposition to the parents with respect to the custody of the child, it does not implicate the liberty interests of the parent or the child as would be the case of a defendant in a criminal action. The underlying right to counsel in criminal proceedings is based on the sixth amendment to the United States Constitution which states in part: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial ... and to have the assistance of counsel for his defense." The Penn-

sylvania Constitution, Article I, Declaration of Rights § 9, Rights of accused in criminal prosecutions, provides: "In all criminal prosecutions the accused hath a right to be heard by himself and his counsel...." The fourteenth amendment of the United States Constitution, section 1, provides: "[N]or shall any State deprive any person of life, liberty, or property without due process of law." From the interrelationships of these constitutional provisions, it may be and has been determined that a person charged with a crime is entitled to legal counsel and denial of that right is denial of due process of law. In Pennsylvania, this right is likewise incorporated in the Judicial Code, 42 Pa.C.S. § 2501.[3] *See Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); *Brewer v. Williams,* 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1963). In that respect, counsel who was not effective has been determined by various decisions to be the equivalent of no counsel and, therefore, a denial of due process. *Evitts v. Lucey,* 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985); *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Commonwealth ex rel Washington v. Maroney,* 427 Pa. 599, 235 A.2d 349 (1967). Thus we can fairly state that when the liberty interests of a defendant in a criminal action are at issue, the effectiveness of counsel is relevant to a due process analysis, but only within the context of the evolved criminal statutes, rules and case law.

Particularly in PCHA/PCRA proceedings which have developed in response to an overwhelming court and appellate review process as a substitute for the writ of habeas corpus, the ineffectiveness claim has surfaced as the last gasp of an accused's attempt to have his sentence set aside after depletion of appeals. By claiming ineffectiveness of counsel in failing to present reasonable defenses as an

---

3. **§ 2501. Appearance in person or by counsel**

 **(a) Civil matters**—In all civil matters before any tribunal every litigant shall have a right to be heard, by himself and his counsel, or by either of them.

 **(b) Criminal matters.**—In all criminal prosecutions the accused has a right to be heard by himself and his counsel.

extraordinary basis for a review of counsel's stewardship, he is permitted a collateral review despite exhaustion of the appeal process. This stewardship can be easily and effectively measured against the rules and standards governing the criminal procedures at all critical stages of the procedure beginning with pretrial motions for suppression, the trial and its conduct, presentment of post-trial motions and timely appeals through representation by appellate counsel. While ineffectiveness of counsel can be raised at any time that new counsel becomes available who can review the effectiveness of prior counsel, the vast majority of such allegations are made after all permissible motions and appeals have been exhausted, as a collateral attack on the judgment of sentence.

From this synopsis of the genesis of the ineffectiveness proceeding, we can begin to draw an appropriate rationale as to how and when such a claim may be raised in a termination proceeding. There are many distinctions and few parallels between the criminal proceeding and the termination proceeding.

First, termination proceedings can in no way be compared to criminal proceedings either in a constitutional sense or procedurally. The right to counsel, protected by the sixth amendment of the United States Constitution, applies to criminal defendants, and its derivative right to effective counsel, which evolved in recent years, was intended only to apply to criminal matters. Attempts to superimpose the right and its accompanying procedures to non-criminal termination cases, while superficially appropriate, is misguided. The procedural rules, appellate posture and nature of the two classes of cases are so disparate that to apply the criminal doctrine to these cases would result in confusion, delays and the necessity for creation of rules of post-trial procedures, review and rehearings that are inappropriate for such matters. The constitutional rights in a termination proceeding, as in juvenile procedures, are derived from the due process clause of the fourteenth amendment of the United States Constitution and not the sixth

amendment. *In Interest of Del Signore,* 249 Pa.Super. 149, 375 A.2d 803 (1977).

 A second distinction which requires that form follow substance is that in criminal cases a liberty stake is at issue. More than anything, ineffectiveness of counsel is raised within the context of Post Conviction Relief Act which is the statutory substitute for habeas corpus cases. The federal system has made a bargain with the states to the effect that if an adequate procedure was developed within the state's statutory scheme to grant relief equivalent to federal habeas corpus relief, the federal courts would retreat from wholesale and routine consideration of habeas corpus petitions by convicted incarcerated defendants, hence, the post-conviction collateral relief procedure with singular reliance on the extraordinary aspects of a claim of ineffectiveness of counsel. No comparable habeas corpus right exists in custody cases involving children, in which the federal habeas corpus jurisdiction is implicated. While prior to statutory and rule changes, habeas corpus was the common law means of raising a custody claim in the state trial courts, this has been and still is a matter only within state court jurisdiction and comes within the self-imposed domestic relations exception to federal jurisdiction. *Barber v. Barber,* 62 U.S. (21 How) 582, 16 L.Ed. 226 (1856). Lest there be any doubt that the exception applies to custody cases, and is still viable in modern times, the recent pronouncement by the United States Supreme Court, Justice Powell speaking for the Court in *Lehman v. Lycoming County Children's Services,* 458 U.S. 502, 102 S.Ct. 3231, 73 L.Ed.2d 928 (1982), makes this absolutely clear.

Ms. Lehman argues that her sons are involuntarily in the custody of the State for purposes of § 2254 because they are in foster homes pursuant to an order issued by a state court. Her sons, of course, are not prisoners. Nor do they suffer any restrictions imposed by a state criminal justice system. These factors alone distinguish this case from all other cases in which this Court has sustained habeas challenges to state-court judgments. More-

over, although the children have been placed in foster homes pursuant to an order of a Pennsylvania court, they are not in the "custody" of the State in the sense in which that term has been used by this Court in determining the availability of the writ of habeas corpus. They are in the "custody" of their foster parents in essentially the same way, and to the same extent, other children are in the custody of their natural or adoptive parents. Their situation in this respect differs little from the situation of other children in the public generally; they suffer no unusual restraints not imposed on other children. They certainly suffer no restraint on liberty as that term is used in *Hensley* [*v. Municipal Court*, 411 U.S. 345, 93 S.Ct. 1571, 36 L.Ed.2d 294 (1973) ] and *Jones* [*v. Cunningham*, 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963) ], and they suffer no "collateral consequences"—like those in *Carafas* [*v. LaVallee*, 391 U.S. 234, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968) ]—sufficient to outweigh the need for finality. The "custody" of foster or adoptive parents over a child is not the type of custody that traditionally has been challenged through federal habeas. Ms. Lehman simply seeks to relitigate, through federal habeas, not any liberty interest of her sons, but the interest in her own parental rights.

Although a federal habeas corpus statute has existed ever since 1867, federal habeas has never been available to challenge parental rights or child custody. Indeed, in two cases, the Court refused to allow the writ in such instances. *Matters v. Ryan*, 249 US 375, 63 L Ed 654, 39 S Ct 315 (1919); *In re Burrus*, 136 US 586, 34 L Ed 500, 10 S Ct 850 (1890).

*Id.* at 510–11, 102 S.Ct. at 3237, 73 L.Ed.2d at 936–37.

Having determined that the evolving right to counsel in termination proceedings cannot be traced to the criminal process, it is a fair statement that the criminal process does not apply.

■ Other considerations that make those procedures inapplicable as indicated above, have to do with the clearly

different safeguards applicable to the procedures. While the standard of proof, clear and convincing evidence, is less in termination proceedings than beyond a reasonable doubt in criminal proceedings, it is still quite high. Additionally, because of the doctrine of Parens Patriae and the need to focus on the best interest of the child, the trial judge, who is the fact finder, is required to be an attentive and involved participant in the process. While he must depend upon the litigants to present the evidence to establish the particular elements or defenses in the termination case, he is not limited to their presentations, and as in any custody case, he may require more than they present and direct further investigation, evaluations or expert testimony to assure him that the interests of the child and the respective parties are properly represented. Under the aegis of the court, the role of the lawyer, while important, does not carry the deleterious impact of ineffectiveness that may occur in criminal proceedings. Also, since requirements of the statute which establish the basis for terminating parental rights are clearly set forth and the evidence necessary to meet these requirements is generally overwhelming, or in the alternative skimpy and subject to question, the role of the fact finder in determining whether the evidence is sufficient is far more important than that of the attorney representing the parents.

Such is not the case in a criminal proceeding where the judge is primarily an arbiter to assure compliance with the rules and to determine the correctness of evidentiary and procedural issues, wherein counsel must carry the burden of the prosecution or the defense. Any untoward insertion of judicial activism in the proceeding may itself be a ground for reversal. Also, frequently the jury is the fact finder and is likewise limited by the presentment of the evidence and must conform its decision making to the parameters laid down by the court. Thus, pursuant to a heavy overlay of rules, procedures and statutory and constitutional requirements, the process for review espoused in *Strickland v. Washington, supra; Commonwealth v. Pierce,* 515 Pa.

153, 527 A.2d 973 (1987); and *Washington v. Maroney, supra,* is meaningful. They are a distortion when applied to termination proceedings.

Other relevant factors, set in juxtaposition, clearly show the anomaly which results in engrafting the approach adopted to the criminal proceedings to the termination cases. Criminal proceedings move in a different time frame than do termination proceedings. Failure to move a criminal proceeding within specific times may result in dismissal; such is not the case in termination proceedings. Improper or inadequate action by counsel may be rectified in part or in toto months or years after a final judgment of sentence with beneficial results for the appellant, whereas a review which turns around a decree of termination, unless done within a narrowly constrained time frame, may do incalculable damage to the child with only marginal or questionable benefit to the parent. In *Lehman, supra,* in denying habeas corpus jurisdiction in the federal courts, the Supreme Court dealt specifically with the harm engendered by delay in such proceedings when it said:

> The states interest in finality is unusually strong in child-custody disputes. The grant of federal habeas would prolong uncertainty for children such as the Lehmans' sons, *possibly lessening their chance for adoption.* It is undisputed that children require secure, stable, long term, continuous relationships with their parents or foster parents. There is little that can be as detrimental to a child's sound development as uncertainty over whether he is to remain in his current "home" under the care of his parents or foster parents, especially when such uncertainty is prolonged. Extended uncertainty would be inevitable in many cases if federal courts had jurisdiction to relitigate custody decisions.

458 U.S. at 513, 102 S.Ct. at 3238, 73 L.Ed.2d at 938 (emphasis added).

This is no less the case if ineffectiveness issues were permitted to extend and delay such resolution by serial allegations of ineffectiveness or instituting rules of court or

court-made law requiring reviews similar to those in criminal proceedings. The Supreme Court recognizes a psychological determinate in child custody proceedings having to do with the child's sense of time, which is measured by a different and faster clock than an adults, and the fact is that children evolve, grow, acquire new attachments and have differing needs which cannot be sublimated to the niceties of legal proceedings and the sometime dubious vagaries of the attacks on a decree.

■ Any determination as to ineffectiveness of counsel must be made expeditiously in the context of the original appeal, as a collateral attack by a post-decree petition and/or appeal, after normal appeals have been exhausted, is not permissible. *In Interest of Del Signore, supra* (Post Conviction Hearing Act is not available to juvenile proceeding since the child is not convicted of a crime). The question then remains what standard must be applied since we have already determined that the rules on ineffectiveness applied to criminal cases do not fit the proceeding on termination. This is answered by reviving the question of *Gault, McKeiver, Winship* and *Santosky, supra,* which is "what process is due?" *Gault* did not suggest that the juvenile courts become junior criminal courts and while *Winship* required proof beyond a reasonable doubt, it did not require that the informality and rehabilitative thrust and interest expressed by the concerned juvenile judge be forsaken, nor did the Supreme Court in *McKeiver* find that jury trials were an essential element to due process in juvenile proceedings. Similarly, we need not ingraft the test espoused by *Maroney* on termination cases to provide the requisite due process required here. *In Interest of Leonardo,* 291 Pa.Super. 644, 436 A.2d 685 (1981) (proceeding held pursuant to alleged violations of the Juvenile Act cannot serve the functions of a proceeding held pursuant to alleged violations of the Crimes Code). Since we are constrained by the elimination of the doctrine of fundamental error which was renounced by *Dilliplaine v. Lehigh Valley Trust Co.,* 457 Pa. 255, 322 A.2d 114 (1974), and we cannot

overlook waiver of certain procedural defects, which is overcome in criminal practice through ineffectiveness claims in post-conviction hearings, we must look to a broader more acceptable means of review. Ironically, while rejecting the criminal practice and procedure, we may be guided by recent legislation to permit us to tailor a rule which will provide the answer to the question as to "what process is due?" Recently, the legislature narrowed the basis for review of ineffectiveness of counsel within the context of the PCRA Act of April 13, 1988, 42 Pa.C.S. § 9543(a)(2)(ii) in providing that a petitioner seeking relief on a claim of ineffective assistance of counsel must plead and prove that counsel's stewardship "so undermined the truth determining process that no reliable adjudication of guilt or innocence could have taken place." This dramatically reduces the tiered inquiry which was established by *Maroney* and *Pierce*. The disenchantment of the Supreme Court with endless attacks upon the judgment of sentence is similarly expressed in *Commonwealth v. Bobby Joe Lawson*, 519 Pa. 504, 549 A.2d 107 (1988).

With the acknowledged retreat by the legislature and Supreme Court from time consuming and seemingly endless collateral attacks on the sentence and conviction, we do not wish to adopt a procedure which is to some degree discredited. We must, therefore, adopt a procedure which assures an opportunity to review an ineffectiveness claim, without adding additional procedural steps, additional hearings or remands for appointment of new counsel. Nor would it be appropriate to relegate those matters to a collateral attack by means of a habeas corpus action, a possibility suggested by dicta in *Del Signore*. *Lehman*, *supra*, has graphically demonstrated the inadequacy of that approach in termination and custody matters. In the context of a termination proceeding, the best approach to suggest itself is the fundamental fairness doctrine whereby, in the exercise of its broad scope of review, an allegation of ineffectiveness of counsel on appeal would result in a review by this Court of the total record with a determina-

tion to be made whether on the whole, the parties received a fair hearing, the proof supports the decree by the standard of clear and convincing evidence, and upon review of counsel's alleged ineffectiveness, any failure of his stewardship was the cause of a decree of termination. Mere assertion of ineffectiveness of counsel is not the basis of a remand or rehearing, and despite a finding of ineffectiveness on one or more aspects of the case, if the result would unlikely have been different despite a more perfect stewardship, the decree must stand.

Our usual standard of review in such cases is as follows. An appellate court, in reviewing an order terminating parental rights, must employ a broad, comprehensive review of the record, but is limited in its standard of review to a determination of whether the trial court's termination of parental rights is supported by competent evidence; unless the lower court has abused its discretion or committed an error of law, the order must stand. *In re Baby Boy P.*, 333 Pa.Super. 462, 482 A.2d 660 (1984).

Applying that standard to the facts of this case, the evidence is overwhelming that termination was mandated. Applying the doctrine of fundamental fairness to the alleged ineffectiveness claim, the failure of counsel to present witnesses as to the possibility of rehabilitation of the mother in this case is of little significance to the result. The evidence of the possibility of rehabilitation is unconvincing in the face of the extremely long period of incapacity, without progress, and the serious deprivation of the child resulting therefrom, which was certain to continue for the indefinite future.

Counsel for the child at trial stated: "I think Children and Youth has done everything possible that they could do, and I think the needs and welfare of this particular child dictate the termination of her parental rights." (T.T. at 123.) Appellant admits she is currently using downers and is also addicted to Tylenol IV and Dardins (T.T. at 109), and admits she is incapable of caring for the child at the present (T.T. at 113). Her prior unsuccessful attempts at detoxification

and drug rehabilitation at Independence House (1980), Valley Forge Medical Center (March 1986), Eagleville (April 1986), Norristown Life Center (May 1986), St. Lukes Detoxification Program (January 1987), Giuffre Medical Center (February 1987), Eagleville Hospital (March 1987), Brandywine (April 1987), return to Eagleville (April 1987), and Norristown Addiction Program (April 1987) suggest little hope for success in the future. She presently lives in a single room, is admittedly not drug free and has not worked since 1981. The alleged ineffectiveness of trial counsel in failing to present a therapist who would be able to testify that appellant has a possibility of rehabilitation, pales into insignificance and triteness in the face of the present situation and unbroken history of drug abuse and lack of parental capacity. Any testimony under these circumstances would have been tolerated but most certainly not believed. Trial counsel should be excused for not doing a useless act and wasting the time of the court and the expert. Appellant is asking for the chance to pose a further experiment with her recovery and the child's life, which is the best that an expert could have suggested to the court.

We believe the able trial judge Louis Stefan handed down the appropriate decree. We add that despite a very well prepared appellate brief and the strongest arguments that could be made for a case, which is at best desperate, there is no merit to the claim of ineffectiveness of trial counsel. Viewing the allegation of ineffectiveness of counsel, in light of the entire record, we believe the hearing was fundamentally fair and counsel's ineffectiveness, if any, played no part in the result. No further delay is warranted and a return of this case to the trial court for rehearing on that issue would be of no avail and would result only in an unwarranted delay of a year or more, with further likely appeals.

Because of the above, the decree of termination must be affirmed.

Order affirmed.[4]

BROSKY, J., concurs in the result.

BECK and ROWLEY, JJ., concur.

MONTEMURO, J., concurs and dissents, joined by CAVANAUGH and ROWLEY, JJ.

JOHNSON, J., dissents.

ROWLEY, Judge, concurring:

I join in the Concurring and Dissenting Opinion by Judge Montemuro based upon my understanding of his Opinion as expressed in my Concurring Opinion in the companion case of *In the Matter of J.P.*, 393 Pa.Super. ——, 573 A.2d 1057 (1990). In addition, I note that exceptions raising the issue of ineffectiveness of trial counsel were filed in this case by new counsel. Since the instant action for the involuntary termination of parental rights was brought in the Orphans' Court Division and therefore the Supreme Court's Orphans' Court Rules requiring the filing of exceptions to the decree nisi applied to it, Pa.R.O.Ct. 7.1, it presumably was appropriate to file the exceptions in the trial court prior to taking the instant appeal. See *In re Involuntary Termination of Parental Rights to B.M.D.*, 487 Pa. 387, 409 A.2d 404 (1979), and *In re Adoption of Hamilton*, 362 Pa.Super. 249, 523 A.2d 1176 (1987) (in the absence of a local rule to the contrary, parties must have opportunity to file exceptions to a decree of involuntary termination of parental rights).

MONTEMURO, Judge, concurring and dissenting:

I am in full accord with the majority's conclusions that effectiveness of counsel is a cognizable issue in the review of termination proceedings; that the rights of the mother herein were justifiably terminated by the trial court, and that appellant's legal representation was not of such charac-

---

**4.** While Judge Johnson has written a Dissenting Opinion, since he agrees with the result and everything except the ineffectiveness issue, it is more properly a Concurring and Dissenting Opinion.

ter as to be a critical factor in this decision. However, I disagree with the majority's reasoning as to the suggested procedure for preserving and raising the ineffectiveness of counsel issue in the context of a termination hearing.

The majority insists that the standard and manner of reviewing ineffectiveness must be tailored to fit the sort of case in which the allegation of counsel's poor performance occurs, in this instance a termination of parental rights. (Majority Opinion at 607–609). However, given the number of contexts in which the right to counsel exists, a logical reading of the action-specific ineffectiveness standard suggested by the Majority would require that there must be a discrete form of testing effectiveness dependent upon the type of proceeding in which it is alleged to have occurred. Clearly, such a schema is unwieldy. It seems more feasible, if only as a practical matter, that where there is a right to counsel it should carry a particular and unmistakable meaning, obvious to everyone involved, whether provider or recipient of the representation.

In fact the method utilized by the Majority in assessing appellant's claims, although described as a combination of the standard set by the PCRA and verbalization of the "fundamental fairness" doctrine, is easily recognizable as a close relative of the formula employed in criminal cases, and the analysis applied bears strong resemblance to that which appears in *Commonwealth v. Durst*, 522 Pa. 2, 559 A.2d 504 (1989) (Ineffectiveness claim grounded in counsel's failure to interview putatively exculpatory witnesses.)

The issue presented by appellant herein is that counsel failed to call witnesses whose testimony would have demonstrated the possibility of appellant's recovery from drug addiction at some undetermined future date. The Majority finds that there was more than enough evidence to justify termination. *Compare, id.*, 522 Pa. at 5, 559 A.2d at 506. It further concludes that even the foregone testimony would have little or no effect in vitiating appellant's admitted present drug usage and lack of parental capacity. The introduction of such speculative evidence as appellant

claims was necessary would be a useless act which counsel need not have performed. *Compare, id.* Finally the Majority concludes that in view of the quality of the putative evidence, its absence played no part in the result, i.e., caused no prejudice to appellant's case. *Compare, id.* Nomenclature apart, there is remarkable consistency in treatment of these claims.

The majority dismisses the structure of raising and assessing ineffectiveness claims already provided by parallel systems, the criminal, civil commitment, and paternity action processes, as paradigms unsuitable for adaptation to a termination proceedings because their derivation is from the Sixth Amendment rather than the Fourteenth. It is argued that because no liberty interest is involved in termination cases, they are not truly adversarial, and the paternal/avuncular responsibility of the trial courts to determine the best interests of the child, buttressed by our broad scope of review is sufficient to insure the effectuation of due process. However, I am not convinced that a threat to liberty is the sole determinant of the worth of an interest, or of whether measures are necessary to protect it. Permanent deprivation of one's child is a weighty interest, albeit one involving no "right". The importance of reasons other than a liberty interest for instituting protective procedures becomes more obvious in light of the Majority's avoidance of the use of the criminal standard of ineffectiveness even where the liberty interest of a juvenile headed for long term commitment to a secure facility is involved. *See, Commonwealth v. Smith,* —— Pa.Super. ——, 573 A.2d 1077 (1990) (Dissenting Opinion by Tamilia, J.); *In re Cunningham,* 00609 Pittsburgh 1988, slip op., —— Pa.Super. ——, 573 A.2d 1096 (1990, Dissenting Opinion by Tamilia, J.). The existence of a liberty interest is not, therefore, dispositive of the propriety of using the criminal system's ineffectiveness standard in other contexts. Further, the Majority's invocation of the rules applied in federal habeas corpus cases is inapposite, since the federal courts have traditionally refused to intervene in family court cases.

It is also the Majority's position that "the ineffectiveness of the lawyer does not carry the deleterious impact it would in a criminal case which is purely adversarial and over which the presiding judge acts primarily as arbiter" (Majority Opinion at 609–610). However convincing this notion might be were this the best of all possible worlds, it is not operational in the system as it is now constituted. Harried judges, case-laden by the demands of populous judicial districts, or in some instances bearing the entire judicial burden of the areas they serve, may, despite a full measure of dedication, simply lack the time to perform the role of *parens patriae* in any meaningful way. It is also unfortunately true that in the real world, not all probation officers, social workers, and other personnel assigned the duty of dealing with the problems of children, and sometimes acting as their advocates, possess the same, or the necessary degree of intelligence, dedication, compassion and interest. Under our system of jurisprudence there is no substitute for competent legal counsel whose primary responsibility it has always been to ferret out all facts of a case and bring them to the attention of the trial judge. This fact was clearly recognized by the Supreme Court in *In re Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), and motivated the assignment to the juvenile system of those due process, and other, rights which it now enjoys. Indeed, recognition of the necessity for their formalization was driven by arguments such as those the Majority makes. Comparison with the juvenile system is apt because the procedural track established for Juvenile Court proceedings closely parallels what occurs in termination actions. Moreover, the same gaps in procedure exist, viz., guidance on the treatment of ineffectiveness claims. The Majority's insistence that the court would inevitably be hindered in its performance by procedural or "technical" requirements becomes less persuasive in light of the finding by Justice Fortas, that "unbridled discretion, however benevolently

motivated is frequently a poor substitute for principle and procedure." *Id.* at 18, 87 S.Ct. at 1439. As is explained at great length, there is no inconsistency between the establishment of procedure and the continuation of those aspects of the system uniquely favorable to children.

While the Majority suggests that the direct appeal process coupled with the broad scope of appellate review are jointly adequate to meet the exigencies of whatever might occur in a termination case, this belief ignores the impact of the waiver doctrine on claims not properly preserved for our review. *See, In re Sanders Children,* 454 Pa. 350, 312 A.2d 414 (1973) (Issues not properly raised in court below would not be considered on appeal from judgment involuntarily terminating parental rights.) Hence, the expectation that fundamental fairness will allow us to resolve issues of trial error or counsel's representation becomes a vain hope.

It is insisted that the imposition of procedural requirements would affect the brevity of time within which matters involving the welfare of children are handled, and that our access to the whole record obviates the necessity for, e.g., remand for hearing, appointment of new counsel, or any other time-consuming intermediate remedial or investigatory steps. However, the question of delay reflects more upon the size of the criminal system than upon an inherent defect in the procedure prescribed to test ineffectiveness claims; the presentation of such a claim in the context of termination proceedings would offer no greater guarantee of remand than it does in the criminal system. As the analysis performed by the Majority in this case demonstrates, the obstacles to presenting a meritorious case of ineffectiveness are formidable: since counsel is presumed to be competent, he/she may not be second-guessed on appellate review; the issues must, *a priori*, have arguable merit; the strategies chosen by counsel must have no reasonable basis designed to effectuate the client's interests; if proven, the ineffectiveness must have had some discernable prejudicial effect. Some of this must be persuasively argues before remand is warranted, and mere

unsupported allegations would, as they always have, receive short shrift. Again, use of a similar formula to argue incompetence of counsel in matters relating to children does not and should not automatically decrease the burden or increase the time necessary to determine the best interests of the child.

What is lacking now is any suggestion about what must occur where the necessity an explanation of counsel's actions becomes apparent. Without remand we would not have a complete record, and without new counsel, there would be no one to raise and/or preserve the issue unless trial counsel were willing to accuse him or herself of malfeasance. A party seeking to terminate parental rights must do so by clear and convincing evidence. *In re Shives*, 363 Pa.Super. 225, 525 A.2d 801 (1987). It may be that absent the assistance of competent counsel, the evidence will, although meeting the standard, not reflect the true circumstances of the case.

In summary, I believe the majority overemphasizes the differences existing between this and other sorts of proceedings in order to deny applicability of similar procedures and standards. What is common to all of the cases in which the ineffectiveness formula is used, is that despite the theoretical lack, in some instances, of truly adversarial parties, e.g., dependency, delinquency and termination proceedings, civil commitments, paternity determinations, it is always the state, with its superior and seemingly endless legal resources, against which a defense must be mounted. The majority would also have us assume that it is only the state which can represent the child's best interests. This theory obviates the necessity for any system, since it would be redundant to litigate a foregone conclusion. As no liberty interests would be involved, and if indeed these are the sole consideration, the state need only seize those children whose parents are alleged to perform their responsibilities poorly, and give them to others, either institutions or individuals whom the state has determined to be worth, an absurd scenario. Whether the end result involves incarcer-

ation, confinement in a mental hospital or youth treatment center, or as here the permanent removal of one's child, the forces of opposition are always larger and better equipped, but are not always either correct or just in their assessments. We may not, in addition to their already formidable array of resources, credit them with omniscience.

If such purely procedural requirements as the Rules of Appellate Procedure find universal application to cases of widely diverse provenance, interest, and relief, I see no reason why the methodology for dealing with ineffectiveness claims posited as desirable in *In Re Smith*, —— Pa.Super. ——, 573 A.2d 1077 (1990), and *In Re Cunningham*, —— Pa.Super. ——, 573 A.2d 1096 (1990), cannot be applied here. In the last analysis, adoption of these procedures would, I believe operate in the best interests of the child.

CAVANAUGH and ROWLEY, JJ., join.

BECK, Judge, concurring:

The principal issue presented is whether a mother whose parental rights were involuntarily terminated was wrongfully denied the effective assistance of counsel at the termination proceeding.[1] I agree with the majority that a decree terminating parental rights may not be disturbed on appeal on the basis of a parent's ineffectiveness of counsel claim unless the performance of counsel affected the outcome of the termination proceeding. I also agree that the appellant in this case has failed to prove that she was prejudiced by any error or omission on her counsel's part. Accordingly, I concur in the result reached by the majority. I write separately, however, since I differ with some aspects of the majority's legal analysis.

S.F., the appellant in this case, had persistent problems with drug addiction that interfered with her ability to raise her daughter T.M.F. In light of S.F.'s failure to respond to drug treatment programs, the Montgomery County Office

---

1. The mother also argues on appeal that the order terminating her parental rights was not supported by clear and convincing evidence. As the majority concludes, this claim is without merit.

of Children and Youth Services (OC & Y) filed a petition for the involuntary termination of S.F.'s parental rights. At the hearing on the petition, S.F. was represented by an attorney from the Montgomery County Legal Aid Service. On January 21, 1988, the court entered a decree nisi terminating S.F.'s rights to T.M.F. S.F. then obtained private counsel who filed exceptions specifically challenging the effectiveness of the Legal Aid attorney. On August 9, 1988, the court denied the exceptions and entered a final termination order. Private counsel then filed this timely direct appeal.

We must consider a challenge to the effectiveness of trial counsel raised on *direct appeal* from *an order terminating parental rights.* This case does not involve a collateral attack on a parental termination order. Nor does this case involve an application of the right to effective assistance of counsel to juvenile delinquency proceedings. The majority's discussion of the writ of habeas corpus as well as the majority's commentary regarding the rights of juveniles is *obiter dictum.* I would defer consideration of these matters until they are squarely presented for review.

Turning to the issue at hand, appellant maintains that her former attorney did not provide effective assistance at the parental termination proceeding. In order to evaluate this claim, it is necessary to conduct a three part inquiry. First, does a parent have a right to counsel at a termination proceeding? If so, does this right to counsel entail a right to have counsel render effective assistance? Moreover, if effective assistance is required, what standard should be used to determine whether counsel's performance has been so poor as to justify vacating a termination decree? Only after considering these preliminary questions can we decide whether appellant is entitled to relief.

## I.

The starting point for an analysis of the right to legal representation in termination proceedings is the text of the Adoption Act. 23 Pa.Cons.Stat.Ann. §§ 2101–2910 (Purdon

Supp.1989). Section 2313 states: "The court shall appoint counsel to represent the child in an involuntary termination proceeding when the proceeding is being contested by one or both of the parents." Thus, children in contested termination proceedings have a clear statutory right to the appointment of counsel. *Barclay v. Barclay*, 367 Pa.Super. 529, 536, 533 A.2d 143, 147 (1987). However, the Act, does not extend this guarantee to indigent parents. The only reference to counsel for parents can be found in the portion of the Act that deals with notice of the hearing on the termination petition. The Act provides:

At least ten days' notice shall be given to the parent or parents, putative parents, or parent of a minor parent whose rights are to be terminated.... The notice shall state the following:

"A petition has been filed asking the court to put an end to all rights you have to your child (insert name of child). The court has set a hearing to consider ending your rights to your child.... You have a right to be represented at the hearing by a lawyer. You should take this paper to your lawyer at once. If you do not have a lawyer or cannot afford one, go to or telephone the office set forth below to find out where you can get legal help.

(Name) . . ...............................
(Address) ...............................
.........................................
(Telephone number) ................... "

23 Pa.Cons.Stat.Ann. § 2513(b).

Section 2513(b) indicates that parents have a right to obtain counsel by their own efforts and to bring this counsel with them to the termination hearing. This section does not mandate that the court itself appoint or provide counsel for the parent, nor does it create an obligation on the part of the state to ensure that counsel is available.[2] Thus,

2. Nor does the Judiciary and Judicial Procedure Code require court appointment of counsel in termination proceedings. The Code simply states: "In all civil matters before any tribunal every litigant shall have a right to be heard, by himself and his counsel, or by either of

Pennsylvania law does not provide a *statutory* basis for relief where proper notice has been given to the parent but the parent has been unable to secure legal representation. One must therefore consider whether an uncounseled termination of parental rights would offend constitutional principles.

The leading case on the constitutional question in this Commonwealth is *In re: Adoption of R.I.*, 455 Pa. 29, 312 A.2d 601 (1973). In *Adoption of R.I.*, the natural mother did not have access to counsel at the time of the termination hearing. On appeal from a final decree terminating her parental rights, the Pennsylvania Supreme Court unanimously concluded that indigent parents have a right to the appointment of free counsel. In reaching this decision, the Court did not conduct a particularized examination of the natural mother's need for legal assistance. The Court instead stressed the vital importance of the right to counsel in all involuntary termination proceedings:

> In has long been established that an individual is entitled to counsel at any proceeding which may lead to the deprivation of "substantial rights." *Coleman v. Alabama*, 399 U.S. 1 [90 S.Ct. 1999, 26 L.Ed.2d 387] (1970), *In re: Gault*, 387 U.S. 1 [87 S.Ct. 1428, 18 L.Ed.2d 527] (1967), *United States v. Wade*, 388 U.S. 218 [87 S.Ct. 1926, 18 L.Ed.2d 1149] (1967), *Miranda v. Arizona*, 384 U.S. 436 [86 S.Ct. 1602, 16 L.Ed.2d 694] (1966), *Com. ex rel. Rambeau v. Collins*, 455 Pa. 8, 314 A.2d 842 (1973). *Commonwealth v. Johnson*, 428 Pa. 210, 236 A.2d 805 (1968). While the above-cited cases are criminal in nature, the logic behind them is equally applicable to a case involving an indigent parent faced with the loss of her child. In the words of the Court of Appeals of New York, which reached the same conclusions in the *Matter of Ella R.B.* [30 N.Y.2d 352, 334 N.Y.S.2d 133, 136], 285 N.E.2d 288, 290 (1972): "A parent's concern for the liberty of the child, as well as for his care and control,

them." 42 Pa.Cons.Stat.Ann. § 2501(a) (Purdon 1981). This language has never been interpreted as granting civil litigants the same right to appointed counsel enjoyed by defendants in criminal prosecutions.

involves too fundamental an interest and right [citing cases] to be relinquished to the State without the opportunity for a hearing, with assigned counsel if the parent lacks the means to retain a lawyer. To deny legal assistance under such circumstances would—as the courts of other jurisdictions have already held [citing cases]—constitute a violation of his due process rights and, in light of the express statutory provision for legal representation for those who can afford it, a denial of equal representation of the laws as well. As the Federal District Court wrote in the very similar Cleaver case [*Cleaver v. Wilcox*, decided March 22, 1972 (40 U.S.L.W. 2658)], 'whether the proceeding be labelled "civil" or "criminal," it is fundamentally unfair, and a denial of due process of law for the state to seek removal of the child from an indigent parent without according the parent the right to the assistance of court-appointed and compensated counsel ... Since the state is the adversary ... there is a gross inherent imbalance of experience between the parties if the parents are not represented by counsel. The parent's interest in the liberty of the child, in his care and in his control, has long been recognized as a fundamental interest ... Such an interest may not be curtailed by the state without a meaningful opportunity to be heard, which in these circumstances includes the assistance of counsel.' "

. . . .

In the instant case ... appellees are attempting to terminate appellant's parental rights against her opposition. Consequently, the appellant's adversaries have the burden of proving that they are entitled by law to terminate those rights. In such a proceeding, it would be grossly unfair to force appellant to defend against the appellee's case without the assistance of someone, trained in the law, who could test the appellees' case by the rules of evidence and the techniques of cross-examination.

455 Pa. at 31–33, 312 A.2d at 602–03.

In the sixteen years since *Adoption of R.I.* was decided, counsel for indigent parents have routinely participated in

involuntary termination hearings in this state. However, subsequent legal developments have called into question the precedential value of the *Adoption of R.I.* decision. In *Lassiter v. Department of Social Services*, 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981), a sharply divided United States Supreme Court held that the federal Constitution does not require the appointment of counsel in every involuntary termination proceeding.[3] The *Lassiter* majority implicitly acknowledged that a parent's freedom to associate with her child is a form of liberty protected by the due process clause of the fourteenth amendment. *See Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 1394, 71 L.Ed.2d 599 (1982). However, the majority emphasized that parental termination proceedings do not directly result in the loss of the parent's freedom from physical confinement. 452 U.S. at 25–26, 101 S.Ct. at 2158–59. The majority therefore established a presumption against the right to counsel in termination cases. This presumption may be overcome in particular instances where the parent's interest in having counsel is at its strongest, the state's interest in proceeding without counsel for the parent is at its weakest, and the risk that the denial of counsel will lead to an erroneous court decision is at its peak. 452 U.S. at 31, 101 S.Ct. at 2161. In other cases, the absence of counsel is "minimally tolerable under the [federal] Constitution." 452 U.S. at 33, 101 S.Ct. at 2163.

*Lassiter* has undermined *Adoption of R.I.*, at least insofar as *Adoption of R.I.'s* broad right to counsel holding was based on the federal due process clause. It is unclear, however, whether *Adoption of R.I.* was decided solely on federal grounds. This court has previously suggested that *Adoption of R.I.* could be viewed as a state constitutional law decision. *Corra v. Coll*, 305 Pa.Super. 179, 187 n. 7, 451 A.2d 480, 485 n. 7 (1982). I would find that the

---

**3.** Four dissenting justices would have recognized a federal constitutional right to counsel in all involuntary termination cases. *See* 452 U.S. at 35–59, 101 S.Ct. at 2163–76 (Blackmun, J., dissenting, joined by Brennan, J. and Marshall, J.) and 452 U.S. at 59–60, 101 S.Ct. at 2176 (Stevens, J., dissenting).

Pennsylvania Constitution provides an adequate and independent basis for extending the right to appointed counsel in involuntary termination proceedings to all indigent parents. *Cf. In re T.R.*, 502 Pa. 165, 465 A.2d 642 (1983) (Pennsylvania law provides independent basis for requirement that state must produce clear and convincing evidence in order to terminate parental rights); *V.F. v. State*, 666 P.2d 42 (Alaska 1983) (recognizing right to counsel in termination proceedings under Alaska Constitution). *See generally* Annotation, *Right of Indigent Parent to Appointed Counsel in Proceeding for Involuntary Termination of Parental Rights*, 80 ALR 3d 1141 (1977) (collecting state constitutional law authorities).

Although the Pennsylvania Constitution does not explicitly refer to due process, "it has been recognized that Article I, sections 1, 9, and 26 combine to provide the counterpart of the federal due process and equal protection provisions." *Gondelman v. Commonwealth*, 520 Pa. 451, 466 n. 11, 554 A.2d 896, 903 n. 11 (1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 146, 107 L.Ed.2d 105 (1989). Article 1, section 9 concerns the rights of the accused in criminal prosecutions, and article 1, section 26 concerns the right of the people to be free from discrimination in the exercise of their civil rights. The provision that deals most directly with fundamental fairness in the context of civil proceedings is article 1, section 1 which provides:

*Section 1. Inherent rights of mankind*

All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness.

I have little difficulty in concluding that among these inherent rights is the right of a parent to enjoy the companionship of her child. As we recently noted in *In re Coast*, 385 Pa.Super. 450, 561 A.2d 762 (1989) (en banc):

The family is an institution which preceded governments. Its sanctity was universally recognized before

judges or statutes or constitutions or welfare organizations were known to man. The right of a child to a mother and a mother to a child are rights created by natural law. They are rights attributable to the nature of mankind rather than to enactments of law.

*Id.,* 385 Pa.Superior Ct. at 464, 561 A.2d at 769 (citing *In re Rinker,* 180 Pa.Super. 143, 147, 117 A.2d 780, 783 (1955)).

One must therefore determine under what circumstances the state may deprive the parent of her article 1, section 1 right to the child. In reaching this determination, we are not bound by *Lassiter* since the provisions of the state constitution may provide greater protection than their federal counterparts. *E.g., Commonwealth v. DeJohn,* 486 Pa. 32, 403 A.2d 1283 (1979), *cert. denied,* 444 U.S. 1032, 100 S.Ct. 704, 62 L.Ed.2d 668 (1980); *Corra v. Coll,* 305 Pa.Super. at 179, n. 7, 451 A.2d at 485 n. 7. This is not to say that the decision to depart from a federal constitutional standard is one that may be taken lightly. I conclude, however, that an extra measure of protection for parents who are subject to termination proceedings is justified for three reasons.

First, the interest that a parent has in the care and companionship of her child is qualitatively different from the interests that are implicated in most other civil proceedings. What is at stake is not a mere property right but the right to maintain what will often be the most important relationship in a person's life. Moreover, termination does not involve a temporary or limited interference with the parent's freedom to associate with the child; "[t]ermination of parental rights is the death sentence to a parent-child relationship." *In re Coast,* 385 Pa.Super. at 483, 561 A.2d at 778 (Tamilia, J., concurring). It is true that a termination decree will not directly result in the loss of the parent's own freedom from physical confinement. Yet, I have no doubt that vast numbers of parents would far prefer to serve a term of imprisonment than have their children taken from them and adopted by others. Accordingly, it does not seem fair to begin an analysis of the right to counsel in termi-

nation proceedings by applying a heavy presumption that no such right exists. Such an approach is insensitive to the unique nature of the injury caused by the loss of a child.

Second, when interpreting our state constitution, we should bear in mind the experience of the people and institutions of this Commonwealth as it relates to the subject at hand. In the years since *Adoption of R.I.* was decided, our family courts have proceeded on the assumption that counsel for parents in involuntary termination proceedings is constitutionally required. The appointment of counsel for the parent is now a customary part of termination proceedings and our state child service agencies have adjusted to the burden of seeking termination decrees in an adversary setting. Thus, it would be difficult to argue that the state's interest in opposing the appointment of counsel is a strong one.[4] Moreover, it is likely that failing to appoint counsel would run contrary to a widespread perception that legal representation in termination proceedings is a fundamental entitlement.

Third, a bright line rule that counsel is required in involuntary termination cases would promote fairness and judicial economy. The problems posed by a case-specific test for the right to counsel were thoughtfully explored by Justice Blackmun in his dissenting opinion in *Lassiter:*

> [T]he case-by-case approach advanced by the Court ... entails serious dangers for the interests at stake and the general administration of justice. The Court assumes that a review of the record will establish whether a defendant, proceeding without counsel, has suffered an unfair disadvantage. But in the ordinary case, this simply is not so. The pleadings and transcript of an uncounseled termination proceeding at most will show the obvious blunders and omissions of the defendant parent.

---

**4.** The state does have a powerful interest in ensuring that termination decrees are not routinely disturbed on appeal on the ground that the natural parent was denied the right to legal representation. However, this interest may be taken into account when reviewing legal challenges to the performance of the parent's appointed counsel. *See* section III, *infra.*

Determining the difference legal representation would have made becomes possible only through imagination, investigation, and legal research focused on the particular case. Even if the reviewing court can embark on such an enterprise in each case, it might be hard pressed to discern the significance of failures to challenge the State's evidence or to develop a satisfactory defense. Such failures, however, often cut to the essence of the fairness of the trial, and a court's inability to compensate for them effectively eviscerates the presumption of innocence. Because the parent acting pro se is even more likely to be unaware of controlling legal standards and practices, and unskilled in garnering relevant facts, it is difficult, if not impossible, to conclude that the typical case has been adequately presented. *Cf. Betts v. Brady*, 316 U.S. [455], at 476 [62 S.Ct. 1252, 1263], 86 L.Ed 1595 (1942) (dissenting opinion).

452 U.S. at 50–51, 101 S.Ct. at 2171–72 (Blackmun, J., dissenting).[5]

For all of the above reasons, I would adhere to the policy enunciated by the Pennsylvania Supreme Court in *Adoption of R.I., supra.* I would find that in this Commonwealth all parents have a constitutional right to be represented by counsel in involuntary termination proceedings.

## II.

Since parents do have a right to counsel in involuntary termination proceedings, we must begin to define the scope and content of this right. In criminal cases, "[i]t has long been recognized that the right to counsel is the right to the

---

**5.** Justice Blackmun added in a footnote:

Of course, the case-by-case approach announced by the Court today places an even heavier burden on the trial court, which will be required to determine in advance what difference legal representation might make. A trial judge will be obligated to examine the State's documentary and testimonial evidence well before the hearing so as to reach an informed decision about the need for counsel in time to allow adequate preparation of the parent's case.

452 U.S. at 51 n. 19, 101 S.Ct. at 2172 n. 19.

effective assistance of counsel." *McMann v. Richardson,* 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 1449 n. 14, 25 L.Ed.2d 763 (1970). It is true that in the criminal context, the right to counsel is grounded in the sixth amendment, a constitutional provision that does not apply to civil proceedings. Yet, the policy behind reviewing the effectiveness of counsel's performance does not depend on the precise textual source of the right to counsel. The reason for insisting that counsel perform in a competent manner stems from the realization that extending a right to secure court appointment of anyone other than an *effective* counsel would be a hollow gesture. *See In re Hutchinson,* 500 Pa. 152, 454 A.2d 1008 (1982) (interpreting Mental Health Procedures Act as guaranteeing right to effective assistance of counsel in civil commitment proceedings); *Banks v. Randle,* 337 Pa.Super. 197, 486 A.2d 974 (1984) (interpreting due process clause of fourteenth amendment as guaranteeing right to effective assistance of counsel for defendants in paternity actions).

Only an effective advocate can perceptively cross-examine witnesses, cogently argue a client's position to the trial judge, or take other action necessary to ensure a fair hearing for the client. Unless counsel for parents in termination proceedings are held to a minimum level of competence, the parent's right to counsel would be nothing more than a right to be accompanied into court by an individual who may be utterly incapable of defending his client's interests. I would therefore find that the state constitutional right to counsel in termination proceedings encompasses a right to the *effective* assistance of counsel.

### III.

We must next consider under what circumstances the right to the effective assistance of counsel in termination proceedings would be violated. In other words, when would a poor performance by parent's counsel provide a sufficient basis for vacating a parental termination order and remanding for a new termination hearing? In answering this

question, it is useful to consult the standard for ineffective assistance of counsel that has developed within the context of criminal appeals. However, as the majority emphasizes, it is also important to bear in mind the significant differences between a parental termination hearing and a criminal trial.

The test for determining whether a criminal defense attorney has provided effective representation is familiar to the bench and the bar. As the Pennsylvania Supreme Court recently noted:

We have taken great pains to set forth the criteria that must be established when one attempts to assert the ineffectiveness of counsel. The threshold inquiry in such claims is whether the issue/argument/tactic which counsel has foregone and which forms the basis for the assertion of ineffectiveness is of arguable merit; for counsel cannot be considered ineffective for failing to assert a meritless claim. *Commonwealth v. Pursell,* 508 Pa. 212, 495 A.2d 183 (1985). If this threshold is met, it must next be established that the particular course chosen by counsel had no reasonable basis designed to effectuate his client's interest. *Commonwealth ex rel. Washington v. Maroney,* 427 Pa. 599, 235 A.2d 349 (1967). Finally, we require that the defendant establish how counsel's commission or omission prejudiced him. *Commonwealth v. Pierce,* 515 Pa. 153, 527 A.2d 973 (1987).

In making assertions of ineffectiveness, we also require that an offer of proof be made alleging sufficient facts upon which a reviewing court can conclude that trial counsel may have, in fact, been ineffective. This is so because we frown upon considering claims of ineffectiveness of counsel in a vacuum. *Commonwealth v. Pettus,* 492 Pa. 558, 424 A.2d 1332 (1981).

*Commonwealth v. Durst,* 522 Pa. 2, 5, 559 A.2d 504, 505 (1989).

This language highlights certain minimal requirements for establishing ineffective assistance of counsel that should also apply to appeals from parental termination

orders. Clearly, counsel for the parent could not be found ineffective for failing to assert a meritless claim at the termination hearing, or for choosing a course of conduct reasonably designed to effectuate the parent's best interest, or for taking or failing to take any action that did not prejudice the parent. Nor could counsel be found ineffective if the parent failed to come forward with a sufficient offer of proof regarding counsel's incompetent representation. Thus, the ineffectiveness analysis in parental termination cases is in many respects similar to the ineffectiveness analysis in criminal cases.

This does not mean, however, that the analysis undertaken in both types of cases should be identical. A termination hearing is not simply a contest between the parent and the state; the result of the hearing has a direct, profound, and inevitable effect upon a third party—the child. Once parental rights are terminated, the child will be removed from the parent's custody and control and placed in a new family environment. The child will usually form strong bonds to her new adoptive parents, or to foster parents or other caretakers as the case may be. The more stable the new environment, the more likely that the child will successfully overcome the trauma associated with the termination proceedings. Thus, a decision to reverse a decree of termination and remand for a new hearing may seriously jeopardize the child's psychological and emotional well-being.

In light of the unique impact that termination will have on the life of the child, the Commonwealth has a powerful interest in preserving the finality of a parental termination decree.[6] This extraordinary need for finality distinguishes parental termination proceedings from criminal proceedings as well as from nearly all other civil proceedings. Accord-

6. Of course, a parental termination order must be vacated if the decree is not supported by clear and convincing evidence. *Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). The Commonwealth's interest in finality is strengthened where the family court has properly applied the clear and convincing evidence standard before entering the termination order.

ingly, there is good cause for applying a more stringent test for measuring the effectiveness of parent's counsel in termination proceedings than for measuring the effectiveness of lawyers representing clients in other settings. I would therefore restrict relief in termination cases to instances in which a parent makes a *strong showing* of ineffective assistance of counsel. The parent should come forward with evidence that indicates that a high degree of likelihood exists that but for an unprofessional error on counsel's part, parental rights would not have been terminated.[7]

These observations are consistent with the "fundamental fairness" test for ineffectiveness of counsel proposed by the majority. Majority Op. at 615–616. I agree with the majority that upon review of an ineffectiveness claim, an appellate court must focus squarely on whether "any failure of [counsel's] stewardship was the cause of the decree of termination." *Id.* However, I see no reason why an allegation of ineffectiveness of counsel should automatically "result in a review by this Court of the total record with a determination to be made whether on the whole, the parties received a fair hearing, [and] the proof supports the decree by the standard of clear and convincing evidence." *Id.* If a parent wishes this court to review the sufficiency of the evidence supporting the termination decree, the parent should raise a separate challenge to the sufficiency of the evidence.

The issue of whether the termination decree is supported by sufficient evidence should not be confused with the issue of whether trial counsel has been ineffective. Wholly apart from any consideration of ineffectiveness of counsel, it is well established that an appellate court must vacate a

7. In criminal cases, the defendant must also prove that he was prejudiced by counsel's deficient performance. However, the defendant need only establish a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Commonwealth v. Groff,* 378 Pa. 353, 374 n. 11, 548 A.2d 1237, 1247 n. 11 (citing *Strickland v. Washington,* 466 U.S. 668, 693–694, 104 S.Ct. 2052, 2067–68, 80 L.Ed.2d 674 (1984)). "[The] defendant need not show that counsel's deficient performance more likely than not altered the outcome of the case." *Id.*

termination order where there is insufficient evidentiary support for the trial court's findings. *See, e.g., In re T.L.G.*, 351 Pa.Super. 256, 505 A.2d 628 (1986). In order for the evidence to be sufficient, the trial court must have reasonably concluded that the elements of the parental termination statute have been established by clear and convincing evidence. *See Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); *Baby Boy A. v. Catholic Social Services*, 512 Pa. 517, 517 A.2d 1244 (1986). Accordingly, if a termination decree is not supported by clear and convincing evidence, this court may ordinarily grant relief without undertaking an analysis of counsel's performance.

Claims of ineffective assistance will usually come into play in cases where there is competent evidence from which a judge could conclude that termination of parental rights is mandated by statute. The majority suggests that under such circumstances, ineffective assistance of counsel would *never* provide a basis for affording the parent relief. *See* Majority Op. at 606. I disagree. Ineffective assistance of counsel may be difficult to establish but it should not be impossible to do so. Suppose, for example, that the trial court determined that parental rights could be terminated because counsel failed to impeach the witnesses who testified against the parent. Or suppose that counsel neglected to present conflicting evidence that strongly bolstered a parent's claim that she had not neglected her children. In such cases, justice requires that the parent have an opportunity to prove that the outcome of the termination proceeding was the result of counsel's incompetence. *Cf. In re Manuel*, 566 A.2d 626, 629 n. 7 (Pa.Super.1989) (denial of right to counsel in dependency proceeding requires remand despite sufficiency of evidence supporting trial court order since "evidence below was completely one-sided").

In the case sub judice, however, appellant has clearly failed to carry her burden of proof. In her brief to this court, appellant claims that her attorney should have asked her mother, her drug counselor, and other unspecified wit-

nesses to testify at the termination hearing that she had made progress in recovering from her drug dependency. Appellant also faults counsel for failing to inform the court that her alleged difficulty in gaining admission to a drug detoxification program in 1987 contributed to her subsequent addiction problems. Yet, in light of appellant's unsuccessful experiences with numerous drug treatment programs, and her history of neglecting the needs and welfare of her daughter, it is difficult to imagine that counsel's purported omissions were of crucial importance. There is every reason to believe that appellant's rights would have been terminated even if counsel had called additional witnesses or presented additional evidence. For the above-stated reasons, I respectfully concur in the result reached by the majority.

JOHNSON, Judge, dissenting.

The majority finds that Pennsylvania case law requires counsel be provided in termination proceedings. The majority then presumes that counsel would and should be effective. To the extent that the majority holds that there exists a right to effective assistance of counsel in proceedings for involuntary termination of parental rights under the Adoption Act, I dissent.

The principle of effective assistance of counsel is a legal term of art. It has very clear constitutional underpinnings within the sixth amendment to the United States Constitution. I have found no case where our federal Supreme Court discusses effective assistance of counsel outside a sixth amendment context. In fact, the Supreme Court has refused to extend the right to appointed counsel to include prosecutions which, though criminal, do not result in the defendant's loss of liberty. *Scott v. Illinois*, 440 U.S. 367, 373–374, 99 S.Ct. 1158, 1162, 59 L.Ed.2d 383, 388–389 (1979).

It is true that our Pennsylvania Supreme Court has held that an indigent mother whose parental rights were being terminated was entitled to be advised of her right to counsel and to appointment of counsel prior to the hearing at which

her rights were terminated. *In re Adoption of R.I.,* 455 Pa. 29, 312 A.2d 601 (1973). The opinion by Justice O'Brien highlights criminal cases in the federal Supreme Court in reasoning that an individual is entitled to counsel in any proceeding which might lead to deprivation of "substantial rights." 455 Pa. at 31, 312 A.2d at 602. There is nothing in *Adoption of R.I.* from which one can deduce that our supreme court ever considered, within the framework of involuntary termination of parental rights, the concept of ineffective assistance of counsel. Although the court considers, in a footnote, an allegation of hearsay evidence and its improper admission, it is considered by the court in terms of the different result which might have obtained had counsel been appointed and present *at the time of the hearing* rather than the parent having been advised *after the hearing* of her right to counsel. 455 Pa. at 33, n. 4., 312 A.2d at 603, n. 4.

Since the case *In re Adoption of R.I., supra,* relies heavily on federal criminal cases involving the sixth amendment, its value as precedent may have been substantially weakened by *Lassiter v. Department of Social Services,* 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981). In *Lassiter,* the Supreme Court held that the due process clause of the fourteenth amendment does not require appointment of counsel in every parental status termination proceeding. The Court stated that there is a presumption that an indigent litigant has a right to appointed counsel only when, if he or she loses, the litigant may be deprived of his or her physical liberty. 452 U.S. at 27–28, 101 S.Ct. at 2159–60, 68 L.Ed.2d at 649. Justice Stewart, writing for the majority, recognized that standards increasingly urged by informed public opinion and now widely followed by the states call for assistance of appointed counsel in termination proceedings, but he made it clear that there is nothing in the concept of fundamental fairness under the fourteenth amendment to require such enlightened policies. 452 U.S. at 33–34, 101 S.Ct. at 2162–63, 68 L.Ed.2d at 653–654.

It appears clear that there is no federal constitutional requirement for appointment of counsel in parental status termination proceedings. *Lassiter, supra.* The only case in Pennsylvania suggesting the right to counsel, *In re Adoption of R.I., supra,* was decided before *Lassiter,* utilizing federal precedent which has been rendered inapposite by the Supreme Court's express holding in *Lassiter.* Although our state supreme court might, in the future, determine that a parent may raise ineffectiveness of counsel as a separate ground for reviewing the trial court's action in a parental rights termination case, it has not as yet done so.

In fact, the Pennsylvania Supreme Court has extended the right to effective counsel in only one non-criminal context, civil commitment proceedings involving an alleged mental incompetent, consistent with the protections required when the state seeks to deprive an individual of her physical liberty. *In re Hutchinson,* 500 Pa. 152, 454 A.2d 1008 (1982), *affirming* 279 Pa.Super. 401, 421 A.2d 261 (1980). The liberty interests of S.F. are not implicated on this appeal. Consequently, I am unwilling to assume, as does the majority, that ineffectiveness of counsel is a relevant consideration within the context of a termination hearing.

The central question as I see it is not *how* the issue of ineffectiveness of counsel may be raised and measured, but rather *whether* any sound argument can be advanced for further extending this term of legal art beyond its home in the sixth amendment.

I found no such persuasive argument in a companion case involving a dependency proceeding, *In the Matter of J.P.,* —— Pa.Super. ——, 573 A.2d 1057 (1990) (Dissenting Opinion, Johnson, J.). I find no such argument here. The concept of ineffective assistance of counsel has no place in a civil parental status proceeding where the court, in terminating the rights of a parent, is obliged to give primary consideration to the needs and welfare of the child. 23 Pa.C.S. § 2511(b). I would not consider how and when such

a concept might be raised. I would also reject any attempt to introduce the principle into adoption proceedings.

As a result of my independent review of the record, I conclude that there exists clear and convincing evidence to support the trial court's conclusion terminating appellant's parental rights pursuant to 23 Pa.C.S. § 2511(a)(5). I find no merit in the second issue raised urging insufficiency of the evidence. I would reject appellant's attempt to argue the alleged ineffectual assistance of trial counsel. The order of August 9, 1988, confirming the adjudication and decree terminating parental rights should be affirmed.