J-S05015-15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| IN RE: THE ADOPTION OF: S.L.B., JR. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: S.B., SR., FATHER | : | No. 1517 WDA 2014 |

Appeal from the Decree August 15, 2014,
Court of Common Pleas, Erie County,
Orphans' Court at No: 12 in Adoption 2014

BEFORE:  DONOHUE, SHOGAN and STABILE, JJ.

MEMORANDUM BY DONOHUE, J.:                **FILED FEBRUARY 06, 2015**

S.B., Sr. ("Father") appeals from the trial court's August 15, 2014 decree, which granted the petition filed by Erie County Office of Children and Youth ("the Agency") to involuntarily terminate his parental rights to S.L.B., Jr. ("Child") pursuant to 23 Pa.C.S.A § 2511(a)(1), (2), (5) and (b) of the Adoption Act.  For the reasons that follow, we affirm.

The trial court summarized the facts and procedural history of this case as follows:

> [Child] was born on September 2, 2011 to [B.D.] [("Mother")] and [Father].  Mother died from complications of Chronic Obstructive Pulmonary Disease on November 4, 2011 when [Child] was only two (2) months old.  [Child] remained in the care of Father until [December 2012] when Father was incarcerated, then transferred to a treatment facility to address his addiction and mental health problems.  On his own, Father arranged for [Child's] maternal aunt to care for [Child] and [he] has been in her care since.

On [April 14, 2013,] the Pennsylvania State Police responded to a phone complaint reporting [that Father] removed his son from the home of the maternal aunt.

Father was staying at a hotel. When the police eventually found him they were concerned enough about his behavior to call [the Agency] for assistance. The caseworker arrived and efforts were made by both the police and the caseworker to coax Father into returning [Child] to his aunt. He refused to cooperate and clearly was behaving in a strange way. The [c]ourt [s]ummary dated February 24, 2014 reports [that] Father acted "agitated and erratic" in his responses to the police and the caseworker. [Father] "was chanting and acting in a bizarre manner." Most disturbing, however, [Child], while in the custody of [Father], wore no socks, shoes or coat. Ultimately, the police called Crisis Services. They proceeded with an involuntary mental health commitment. A verbal [d]etention [o]rder was obtained for [Child], he was returned to his aunt [and] then adjudicated dependent on April 25, 2013.

A [d]ispositional [h]earing took place on May 22, 2013 and a written [o]rder entered one week later. The goal at the time was to reunify Father with his son. To achieve the goal, the [c]ourt ordered [Father] to refrain from using drugs or alcohol; complete drug and alcohol treatment and submit to random urine testing; complete parenting classes; demonstrate the ability to provide for the health, safety and welfare of [Child]; visit [Child] with all visits contingent on [Father]'s drug[-] and alcohol free[-]state; secure employment; secure stable and safe housing; and pay child support.

The first permanency review was held on October 2, 2013 with a written [o]rder following the next day. The [c]ourt found Father had only moderately complied with the May permanency plan because he used drugs or alcohol on at least two occasions. The

[c]ourt further found there was minimal progress toward alleviating the circumstances which necessitated the original placement. A review was scheduled in four months. The goal of reunification remained unchanged.

Trial Court Opinion, 10/10/14, at 5-7.

A second permanency review hearing occurred on February 24, 2014. On February 27, 2014, the trial court ordered the permanency goal changed from reunification to adoption. On March 25, 2014, Father filed a timely notice of appeal from that order, and on August 27, 2014, this Court affirmed. *See In re S.B., Jr.*, 495 WDA 2014 (August 27, 2014) (unpublished memorandum). On March 4, 2014, during the pendency of that appeal, the Agency filed a petition to involuntarily terminate Father's parental rights to Child. On August 15, 2014, the trial court held a hearing on the petition, at the conclusion of which it ordered the involuntary termination of Father's parental rights. On August 25, 2014, Father filed a post-trial motion for relief requesting reconsideration of the involuntary termination decree. The trial court denied this motion on August 27, 2014. On September 11, 2014, Father filed a timely notice of appeal and concise statement of the errors complained of on appeal.

On appeal, Father raises the following issues for our review and determination:

> 1. Did the [trial court] commit an abuse of discretion or error of law when it concluded that the

Agency established sufficient grounds for termination under 23 Pa.C.S.A. § 2511(a)(1)?

2. Did the [trial court] commit an abuse of discretion or error of law when it concluded that the Agency established sufficient grounds for termination under 23 Pa.C.S.A. § 2511(a)(2)?

3. Did the [trial court] commit an abuse of discretion or error of law when it concluded that the Agency established sufficient grounds for termination under 23 Pa.C.S.A. § 2511(a)(5)?

4. Did the [trial court] commit an abuse of discretion or error of law when it concluded that termination of [Father]'s parental rights was in [Child]'s best interests under section 2511(b)?

5. Was appointed-counsel ineffective in his representation of [Father] at the IVT trial?

Father's Brief at 7.[1]

We begin by addressing Father's claims relating to sections 2511(a) and (b) of the Adoption Act. Our standard of review for cases involving the termination of parental rights is as follows:

> When reviewing an appeal from a decree terminating parental rights, we are limited to determining whether the decision of the trial court is supported by competent evidence. Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. Where a trial court has granted a petition to involuntarily terminate parental rights, this Court must accord the hearing judge's decision the same deference that we would give to a jury verdict. We must employ a broad, comprehensive review of the

---

[1] We reordered Father's issues for ease of review.

record in order to determine whether the trial court's decision is supported by competent evidence.

*In re J.F.M.*, 71 A.3d 989, 992 (Pa. Super. 2013) (quoting *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009)). "The trial court is free to make all credibility determinations, and may believe all, part, or none of the evidence presented." *Id.* Importantly, "[i]f the findings of the trial court are supported by competent evidence, we will affirm even if the record could also support the opposite result." *Id.*

When deciding a case falling under section 2511, the trial court must engage in a bifurcated process. *In re B.C.*, 36 A.3d 601, 606 (Pa. Super. 2012). In that analysis,

> [t]he initial focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies at least one of the nine statutory grounds in section 2511(a). If the trial court determines that the parent's conduct warrants termination under section 2511(a), then it must engage in an analysis of the best interests of the child under section 2511(b), taking into primary consideration the developmental, physical, and emotional needs of the child.

*Id.*

First, Father challenges the termination of his rights under section 2511(a). We note that the trial court terminated Father's parental rights to Child pursuant to subsections (1), (2), and (5) of section 2511(a). Notably, "[t]his Court may affirm the trial court's decision regarding the termination

of parental rights with regard to any one subsection of [s]ection 2511(a)."

***In re B.L.W.***, 843 A.2d 380, 384 (Pa. Super. 2004) (en banc). Accordingly, we focus our analysis on section 2511(a)(5).

Section 2511(a)(5) provides:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> *         *         *
>
> (5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least 6 months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of parental rights would best serve the needs and welfare of the child.

23 Pa.C.S.A. § 2511(a)(5).

The certified record on appeal supports the trial court's decision to terminate Father's parent rights under section 2511(a)(5). Child has been out of Father's care for a period of at least six months as he was adjudicated dependent on April 25, 2013, and has remained in the care of his maternal aunt since that time. ***See*** N.T., 8/15/14, at 15-16. The record reflects that Father has a history of abusing heroin, cocaine, and alcohol and that Father

- 6 -

suffers from bipolar disorder and antisocial personality disorder. N.T., 2/24/14, at 20. The trial court indicated that the conditions that led to the removal of Child from Father's care were his drug and alcohol abuse and his mental health issues. *See* Trial Court Opinion, 10/10/14, at 5-6, 11-12.

The certified record further reveals that the conditions that led to the removal of Child continue to exist and Father will not remedy those conditions within a reasonable time. Following the events of April 14, 2013, which led to Child's removal from Father's care, Father underwent an inpatient psychiatric evaluation at Saint Vincent Health Center ("Saint Vincent"). *See* Saint Vincent Psychiatric Evaluation, 4/16/13. This evaluation indicated that Father was suffering from bipolar disorder and that he was behaving in an anxious, impulsive, and psychotic manner. *Id.* at 3. This evaluation also revealed that Father was exhibiting "poor insight, poor judgment, and poor impulse control." *Id.* Father's discharge assessment indicated that his mental health gradually improved with medication. Saint Vincent Discharge Assessment, 5/1/13, at 1. Father's discharge assessment instructed that Father was to continue taking medication for his bipolar disorder and follow-up with an outpatient psychiatrist. *See id.* at 2.

After Child's dependency adjudication, the trial court ordered Father to "successfully complete a mental health evaluation, comply with treatment recommendations, and demonstrate mental health stability." Trial Court Order, 5/29/13, at 1-2. Patty Bush ("Bush"), a caseworker at the Agency,

testified that Father received biweekly mental health therapy from Stairways Behavioral Health beginning in June 2013 through November 2013, at which time he was incarcerated for a probation violation.[2]  N.T., 8/15/14, 55-58. Since November 2013, Father has not been receiving any treatment for his mental health problems.  *Id.* at 57, 59.  Bush further testified that as of February 2014, around the time the trial court changed Child's goal from reunification to adoption and just prior to the Agency filing the petition to terminate Father's parent rights, Father continued to have the same mental health problems that led to Child's dependency adjudication and was in no better position to raise Child.  *Id.* at 60.

Additionally, Father himself testified that he is not currently taking any medications or seeing a psychiatrist.  *Id.* at 91.  In fact, there is no evidence that Father has been taking medication for his mental health problems since he left Saint Vincent in early May 2013.  Father stated that he is dealing with his mental health issues with the use of "spiritual principles" and "positive affirmations."  *Id.* at 92.  Thus, Father admitted that, despite the trial court's May 29, 2013 order in the dependency matter, he is not currently and has not recently been receiving treatment for his mental health diagnoses.  *See id.* at 91-92; Trial Court Order, 5/29/13, at 1-2.  Rather, Father believes that he is "in a real good place today," and that he does not

---

[2]  The record indicates that Father was released from prison on December 9, 2013.  N.T., 8/15/14, at 33.

need any other type of help for his mental health issues. *See* N.T., 8/15/14, at 92. Furthermore, Father's probation officer testified that Father has told her that he does not believe that he has mental health problems and that he does not need any medications. *Id.* at 35.

The trial court found the testimony regarding the state of Father's mental health was credible and that Father's contrary testimony was not worthy of belief. *See* Trial Court Opinion, 10/10/14, at 12-13. We are bound by this determination as "[t]he trial court is free to make all credibility determinations, and may believe all, part, or none of the evidence presented." *J.F.M.*, 71 A.3d at 992. Thus, the record reflects that the conditions that led to Child's removal continue to exist and that Father is unwilling to remedy these conditions. *See* N.T., 8/15/14, at 35, 60, 91-92.

Father argues that he recently met with a psychiatrist who diagnosed him with "situational depression" and told him that he did not need medication. Father's Brief at 18-19. However, Father only relies on his own testimony to support this assertion and, as previously stated, the trial court found Father's testimony was not credible. *See* Trial Court Opinion, 10/10/14, at 12-13. Moreover, Father's own testimony indicates that this psychiatrist instructed Father that medication was not necessary for his mental health problems only if he was active in counseling, and Father testified that he was not in counseling and does not believe he needs

counseling. N.T., 8/15/14, at 90-92. Accordingly, this argument affords Father no relief.

The record further supports a finding that termination of Father's parental rights would best serve the needs and welfare of Child. As stated above, Father has failed to follow through with resolving his mental health issues, which served as a basis for the finding of dependency, as it left Child without proper parental care and control as required by law. *See* 42 Pa.C.S.A. § 6302(1). Child has lived with his maternal aunt fulltime since April 2013. *See* N.T., 8/15/14, at 15-16. Child's maternal aunt provides day-to-day comfort and care for Child and takes him to all of his medical appointments. *Id.* at 61. Bush testified that terminating Father's parental rights would provide Child with the stability and permanency that he needs. *Id.* at 60-61. Therefore, the Agency produced sufficient evidence to permit the termination of Father's parental rights pursuant to section 2511(a)(5).

Father also challenges the trial court's determination with regard to section 2511(b). Section 2511(b) provides:

> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.

23 Pa.C.S.A. § 2511(b). When undertaking this inquiry, the trial court must consider whether termination of parental rights would best serve the developmental, physical and emotional needs of Child. *In re C.M.S.*, 884 A.2d 1284, 1286-87 (Pa. Super. 2005), *appeal denied*, 897 A.2d 1183 (2006). "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." *Id.* at 1287 (citation omitted). The trial court must also discern the nature and status of the parent-child bond, with the utmost attention to the effect on the child of permanently severing that bond. *See id.*

Considering this aspect of the termination proceedings, the trial court found as follows:

> [Child] has lived with his maternal aunt since he was adjudicated dependent, more than half his life. There is no evidence to show or suggest he is not in a good home where he is loved and his needs met. There is also no evidence to show there is a strong bond between [Child] and Father that requires reunification. On the contrary, to remove [Child] from the care of his aunt to return him to his Father can only cause significant and irreparable harm, something that is not in his best interests.

Trial Court Opinion, 10/10/14, at 13.

The certified record on appeal supports the trial court's analysis. As we established above, Child has lived with his maternal aunt since prior to his adjudication of dependency. *See* N.T., 8/15/14, at 14, 16. Child's maternal aunt testified that she provides for all of his needs, including food,

clothing, comfort, and education. *Id.* Child's maternal aunt testified that she is willing to adopt Child and that he has become a part of her nuclear family. *Id.* 17-18. The certified record further reflects that there is not a strong bond between Child and Father. Following Child's dependency adjudication in April 2013, Father was to have two visits with Child per month and those visits were contingent on Father being drug and alcohol free. Trial Court Order, 5/29/13, at 1-2. From July 2013 until January 2014, Father missed seven visits with Child due to drug and alcohol relapses. N.T., 8/15/14, at 47. Despite not regularly seeing Father, Child does not ask about his Father, where he is, or why is not around. *Id.* at 16-17, 62. Indeed, Bush testified that she witnessed no detrimental effect to Child by not seeing Father. *Id.* at 62.

Father argues that he does have a strong bond with Child and that the end of visits between Father and Child have been problematic for Child. Father's Brief at 20. Father once again only relies on his own testimony to support this assertion. *See id.* As we have previously established, the trial court found Father's testimony was not credible and we are bound by that determination. *See* Trial Court Opinion, 10/10/14, at 12-13; *J.F.M.*, 71 A.3d at 992. Moreover, Richelle Bann, a case aide at the Agency, testified that it was Father who became emotional at the conclusion of a visit with Child in January 2014, and it was Father's behavior that upset Child and made the separation difficult for Child. N.T., 8/15/14, at 50. Accordingly,

we conclude that the trial court did not abuse its discretion in terminating Father's parental rights with respect to Child.

As his final issue on appeal, Father argues that his trial counsel was ineffective in his representation of Father through the involuntary termination of parental rights proceedings. Father's Brief at 21-24. This Court has stated that in a termination of parental rights case, "[a]ny determination as to ineffectiveness of counsel must be made expeditiously in the context of the original appeal, as a collateral attack by post-decree petition and/or appeal, after normal appeals have been exhausted, is not permissible." *In re S.W.*, 781 A.2d 1247, 1249 (Pa. Super. 2001) (quoting *In re T.M.F.*, 573 A.2d 1035, 1043 (Pa. Super. 1990) (en banc)). "The overriding consideration in this respect is … whether the result would likely have been different if there had been a more perfect stewardship." *Id.* Furthermore, the "[m]ere assertion of ineffectiveness of counsel is not the basis of a remand or rehearing, and despite a finding of ineffectiveness on one or more aspects of the case, if the result would unlikely have been different despite a more perfect stewardship, the decree must stand." *Id.* (quoting *T.M.F.*, 573 A.2d at 1044).

Here, Father's appellate counsel states that he is not aware of any rule for alleging ineffectiveness in a termination of parental rights appeal. Father's Brief at 21. As a result, he only lists, verbatim as written by Father, eight paragraphs containing multiple allegations of ineffective assistance of

counsel on the part of trial counsel. ***See id.*** at 21-24. Appellate counsel does not make any argument on Father's behalf as to how trial counsel's alleged ineffectiveness prejudiced Father. ***See id.*** Father's list of ineffectiveness allegations likewise contains no such argument. ***See id.*** As a result, we only have the mere assertion of ineffective assistance of counsel, which, as stated above, does not provide this Court with a basis to afford Father relief. ***See S.W.***, 781 A.2d at 1249.

Moreover, the eight allegations of ineffectiveness raised are meritless. Father makes three complaints relating to trial counsel's alleged failure to inform the trial court that a psychiatrist diagnosed him with "situational depression" and told him that he did not need to be medicated. ***See*** Father's Brief at 21-23. Father also complains that trial counsel failed to inform the trial court of the bond he shared with Child. ***Id.*** at 23. As we established above, however, Father testified to each of these issues himself. Thus, the trial court was made aware of this information, rendering Father's claims of trial counsel's ineffectiveness in these regards meritless.

Father further alleges that trial counsel failed to inform the trial court of his successful completion of parenting classes. Father's Brief at 21-23. Father also complains about having to testify in narrative form and the fact that trial counsel only called one witness on his behalf. ***Id.*** at 23-24. He does not give any indication as to what additional witnesses trial counsel could have called in support of his case. ***See id.*** Moreover, our review of

the trial court's opinion reveals that it terminated Father's parental rights because of his inability to parent Child based upon his continued insistence that he had no mental health problems and his refusal to participate in treatment. Trial Court Opinion, 10/10/14, at 15. Thus, these allegations of ineffectiveness had no impact on the outcome of the case.

Lastly, Father complains that trial counsel did not file a brief on his behalf for his appeal stemming from the goal change from reunification to adoption. Father's Brief at 24. Our review of the prior decision by this Court does not support this claim. *See S.B., Jr.*, 495 WDA 2014 at 2. Father's appellate counsel likewise acknowledges that this claim is frivolous. *See* Father's Brief at 21 n.2.

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/6/2015