J-S42015-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE: THE ADOPTION OF H.O. AND L.D., | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellees | |
| APPEAL OF: J.O., NATURAL FATHER | |
| | No. 27 WDA 2016 |

Appeal from the Decree December 3, 2015
In the Court of Common Pleas of Erie County
Orphans' Court at No(s): No. 65A, 65 in Adoption 2015

BEFORE: SHOGAN, OTT, and FITZGERALD,[*] JJ.

MEMORANDUM BY SHOGAN, J.: **FILED JUNE 10, 2016**

J.O. ("Father") appeals[1] from the decree entered on December 3, 2015, in the Erie County Court of Common Pleas that terminated his parental rights to his minor children L.D. and H.O. ("the Children").[2] Father's counsel has filed a petition for leave to withdraw and a brief

---

[*] Former Justice specially assigned to the Superior Court.

[1] Father's duplicative *pro se* appeal at 36 WDA 2016 was dismissed by this Court *sua sponte* in an order filed on February 19, 2016.

[2] Mother's parental rights were also terminated. However, Mother did not file an appeal, and she is not a party to the instant appeal.

pursuant to **Anders v. California**, 386 U.S. 738, 744 (1967). We grant counsel's petition to withdraw and affirm.[3]

The relevant facts of this case were set forth by the orphans' court as follows:

> H.O. was born [in March of] 2013 drug[-]exposed to opiates. The [Office of Children and Youth ("OCY" or "the agency"] became involved with the family shortly after his birth, though H.O. was not taken into protective custody at that time. *Involuntary Termination of Parental Rights Hearing Transcript, Day 1, 12/2/15, p. 45-46*. H.O.'s sister, L.D., was born [in November of] 2014. She also tested positive for opiates. Due to the parents' drug history, history with the agency, unstable housing, and concerns about untreated mental health conditions, both children were adjudicated dependent and placed in foster care on December 2, 2014. *Permanency Review Hearing Summary, 12/21/15, p. 1. See also Involuntary Termination of Parental Rights Hearing Transcript, 12/2/15, p. 45, 49, 57.*
>
> At the time of the adjudication, [Father] was incarcerated in the Erie County Prison. One month later, after a probation revocation, [Father] was sentenced to serve time in a state correctional institution. *Permanency Review Hearing Summary, 6/22/15, p. 6.*
>
> A permanency review hearing was held on April 20, 2015. [Father] had been court ordered [to] submit to paternity testing, participate in an assessment to determine if he was eligible for the Erie County Family Dependency Treatment Court, participate in an additional drug, alcohol, and mental health assessment, secure safe and stable housing, and obtain/maintain gainful employment. At the time of the review hearing, [Father] had not complied in any way with his individualized treatment plan. He failed to submit to paternity testing, did not complete the initial evaluation for Dependency Treatment Court, nor did he participate in an additional drug, alcohol, or mental health

---

[3] On May 4, 2016, we remanded this matter to the orphans' court for the drafting of a Pa.R.A.P. 1925(a) opinion. The orphans' court promptly complied, and this matter is now ripe for disposition.

assessment. *Petition for Involuntary Termination of Parental Rights, p. 9.*

Of great concern to this court was [Father's] inability to refrain from the use of drugs or alcohol. [Father] was administered eight urine screens before he was detained on a probation violation in January, 2015. Of those screens, two were positive for opiates and one considered a no-show positive. *Petition for Involuntary Termination of Parental Right, p. 9.*

Due to [Father's] lack of compliance with his court-ordered treatment plan, the permanency goal was changed to adoption. All further services to [Father] were ordered terminated.

A termination hearing took place on December 2 and 3, 2015. At the time of the hearing, [Father], incarcerated in state prison, participated via telephone. *Involuntary Termination of Parental Rights Hearing Transcript, Day 1, 12/2/15, p. 17-20.*

The testimony presented at the termination hearing revealed the following:

[Father's] history with drug use began when he tested positive for heroin and morphine in September, 2013. [Father] was ordered into detox by his probation officer. *Involuntary Termination of Parental Rights Hearing Transcript, Day 1, p. 46-47.* At this time and through November, 2013, H.O. was placed with a maternal aunt. *Id.*

In December, 2013, H.O. was returned to his mother at a community house, but then placed with his aunt when mother moved to a different treatment facility. During this time, [Father] made sporadic contact with H.O. [Father] explained his lack of contact was because of a "difficult" relationship with the aunt because he had not submitted to paternity testing. *Involuntary Termination of Parental Rights Hearing Transcript, Day 1, 12/2/15, p. 48-50.*

However, the record reflects that as early as 2013, OCY attempted to assist [Father] in obtaining a paternity test. [Father] did not dispute the agency's efforts, but instead attempted to excuse his failure to obtain the test by alleging he did not have the money to do it, despite working sixty hours per week. *Involuntary Termination of Parental Rights Hearing*

*Transcript, Day 1, 12/2/15, p. 84-85.* [Father] blamed his lack of funds on having to spend money on gas each day to drive to Erie to fulfill the conditions of his probation. *Id.*

[Father] again violated his probation contract by leaving Erie County on an unapproved visit to see the mother in Ashland, Pennsylvania and was once again detained, revoked, and incarcerated in early 2014. From March through June, 2014, [Father] had no contact with H.O. *Involuntary Termination of Parental Rights Hearing Transcript, Day 1, 12/2/15, p. 52-53.*

Probation next detained [Father] in November, 2014 for opioid use. *Involuntary Termination of Parental Rights Hearing Transcript, Day 1, 12/2/15, p. 31.*

Following [Father's] release from prison in December, 2014, [Father] was scheduled to begin treatment at Stairways Behavioral Health, but was once again detained because of positive urine results for opiates. [Father] was revoked on February 6, 2015 and sentenced to a period of 18-36 months incarceration in state prison. *Involuntary Termination of Parental Rights Hearing Transcript, 12/2/15, Day 1, p. 33.*

In addition to [Father's] failure to refrain from drug use and failure to comply with conditions of his probation, his testimony at the termination hearing also showed he failed to complete other portions of his treatment plan, including submission for evaluation for the Erie County Family Dependency Treatment Court. *Involuntary Termination of Parental Rights Hearing Transcript, 12/2/15, Day 1, p. 42.* [Father] disputes his non-compliance with this portion of the treatment plan, stating the "whole situation" was not explained to him. *Involuntary Termination of Parental Rights Hearing Transcript, Day 1, 12/2/15, p. 78-80.*

However, testimony from the caseworker and a representative from Dependency Treatment Court showed the contrary. *Involuntary Termination of Parental Rights Hearing Transcript, Day 1, 12/2/15, p. 42.* The Dependency Court liaison testified she explained to [Father] how he could get assessed for court, gave him the date of orientation, and followed up by providing this information in a letter. *Id. at 42-43, 46, 60-61.*

Despite the [C]hildren's adjudication in December, 2014, the agency was involved with the family as early as May, 2013. Workers attempted to provide housing assistance and supplied [Father] with information regarding programs designed to help him support himself. The caseworker also attempted to assist in [Father's] compliance with his probation, but was unsuccessful. *Involuntary Termination of Parental Rights Hearing Transcript, Day 1, 12/2/15, p. 46-47.* Erie County Adult Probation made similar attempts to secure [Father's] compliance with his treatment plan and conditions of probation. These efforts were also unsuccessful. *Involuntary Termination of Parental Rights Hearing Transcript, Day 1, 12/2/15, p. 46-47.*

All additional efforts to help [Father] complete a mental health assessment, and obtain employment and safe and stable housing were also unsuccessful. Other than eventually establishing paternity of H.O. and L.D., [Father] failed to comply with the remaining portions of his treatment plan. *Involuntary Termination of Parental Rights Hearing Transcript, Day 1, 12/2/15, p. 59-61.*

[Father's] testimony at the termination hearing lacked credibility and showed a refusal to take responsibility for his actions. [Father] claimed he participated in some groups, but never provided any documentation to verify this. He made an incredible assertion to his caseworker that at least one of his positive urinalyses for heroin was caused by ingesting breast milk from the mother stored in the refrigerator. *Involuntary Termination of Parental Rights Hearing Transcript, Day 1, 12/2/15, p. 66-67.* [Father] stated H.O. lived with him other than the three months he was incarcerated. However, when questioned on cross-examination about the timeframe, he stated "that was a long time ago" and he was not sure of all the dates. *Involuntary Termination of Parental Rights Hearing Transcript, Day 1, 12/2/15, p. 86-88*.

[Father] relayed to this court his projected release date from prison was sometime in the week of February 26th, 2016, after he completed a certain program, but this information was later contradicted by a submission from his counsel. *Involuntary Termination of Parental Rights Hearing Transcript, Day 1, 12/2/15, p. 80.*

[Father] acknowledged he had not seen L.D. since she was one month old and likely had no bond with her. [Father] also agreed he had not seen H.O. for over a year, which amounted to more than one-third of H.O.'s life. *Involuntary Termination of Parental Rights Hearing Transcript, Day 2, 12/3/15, p. 17-18.*

As of the date of the termination hearing, the [C]hildren were thriving in the care of an approved foster family. This family is also an adoptive resource. The family meets all of the [C]hildren's extensive special needs brought about because of their *in utero* drug exposure. The [C]hildren are bonded to their foster family, with their needs met along with the stability and permanency they require in order to thrive. *Involuntary Termination of Parental Rights Hearing Transcript, Day 1, 12/2/15, p, 67-68.*

Based on the foregoing, this court concluded [Father's] testimony was not credible and that the agency met their burden of proof by clear and convincing evidence under 23 Pa.C.S.A. §2511 (a)(1), (2), (5), and (b). *Involuntary Termination of Parental Rights Hearing Transcript, Day 2, 12/3/15, p. 23.*

Orphans' Court Opinion, 5/12/16, at 2-7.

On December 3, 2015, the orphans' court terminated Father's parental rights to L.D. and H.O., and Father filed a timely appeal. In Father's notice of appeal, Father's counsel included a statement of intent to withdraw pursuant to **Anders v. California**, 386 U.S. 738 (1967)[4] and Pa.R.A.P.1925(c)(4). **See In the Interest of J.T.**, 983 A.2d 771, 772 (Pa. Super. 2009) (applying **Anders** procedures and Pa.R.A.P. 1925(c)(4) to appeals involving the termination of parental rights). On March 4, 2016,

---

[4] **Anders** sets forth the requirements for counsel to withdraw from representation on direct appeal. **See also Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009) (discussing **Anders** and explaining Pennsylvania's requirements for an **Anders** brief when counsel petitions to withdraw on direct appeal).

counsel filed an **Anders** brief, and on March 7, 2016, counsel filed a petition to withdraw.

Pursuant to **Anders**, when counsel believes an appeal is frivolous and wishes to withdraw representation, he or she must do the following:

(1) petition the court for leave to withdraw stating that after making a conscientious examination of the record . . ., counsel has determined the appeal would be frivolous;

(2) file a brief referring to anything that might arguably support the appeal, but which does not resemble a "no-merit" letter or *amicus curiae* brief; and

(3) furnish a copy of the brief to defendant and advise him of his right to retain new counsel, proceed **pro se** or raise any additional points he deems worthy of the court's attention.

**In re: S.M.B.**, 856 A.2d 1235, 1237 (Pa. Super. 2004) (emphasis in original) (citation omitted). In **In re V.E.**, 611 A.2d 1267, 1275 (Pa. Super. 1992), this Court extended the **Anders** principles to appeals involving the termination of parental rights.

"When considering an **Anders** brief, this Court may not review the merits of the underlying issues until we address counsel's request to withdraw." **In re: S.M.B.**, 856 A.2d at 1237. In **Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009), our Supreme Court addressed the second requirement of **Anders**, *i.e.*, the contents of an **Anders** brief, and instructed that the brief must:

(1) provide a summary of the procedural history and facts, with citations to the record;

(2)    refer to anything in the record that counsel believes arguably supports the appeal;

(3)    set forth counsel's conclusion that the appeal is frivolous; and

(4)    state counsel's reasons for concluding that the appeal is frivolous.  Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Santiago*, 978 A.2d at 361.  "After an appellate court receives an *Anders* brief and is satisfied that counsel has complied with the aforementioned requirements, the Court then must undertake an independent examination of the record to determine whether the appeal is wholly frivolous." *In re: S.M.B.*, 856 A.2d at 1237 (citation omitted).  With respect to the third requirement of *Anders*, that counsel inform the defendant of his rights in light of counsel's withdrawal, this Court has held that counsel must "attach to [his] petition to withdraw a copy of the letter sent to [his] client advising him . . . of [his] rights." *Commonwealth v. Millisock*, 873 A.2d 748, 752 (Pa. Super. 2005).

Here, counsel indicated that he reviewed the record and determined that an appeal would be frivolous.  Petition to Withdraw, 3/7/16, at unnumbered 1.  Additionally, we conclude that counsel's *Anders* brief comports with the requirements set forth by the Supreme Court of Pennsylvania in *Santiago*.  Attached to his petition to withdraw, counsel included a copy of the letter he sent to Father.  In this letter, counsel informed Father of his intention to seek permission to withdraw because

there are no meritorious issues. Letter, 3/4/16. Counsel then states: "At this point, you may make any additional arguments you have to the Superior Court directly. Make sure to file these arguments in writing and list the docket number as **27 WDA 2016**." *Id*. (emphasis in original). We are cognizant that while counsel was clear as to how Father may present additional argument to this Court, counsel did not specifically delineate that Father may raise these issues on his own **or retain private counsel**. *In re: S.M.B.*, 856 A.2d at 1237 (emphasis added). Nevertheless, we conclude that Father has minimally complied with the aforementioned requirements, and having received no correspondence from Father despite counsel instructing him on how to do so, we proceed to the merits of the issues raised and our own independent review of the entire record.

In the *Anders* brief, counsel presents the following issues:

1. DID THE LOWER COURT ERR IN DETERMINING THAT TERMINATION OF RIGHTS WAS APPROPRIATE PURSUANT TO 23 Pa.C.S.A. 2511(a)(2), AS [Father] HAD REMEDIED THE CONDITIONS THAT LED TO PLACEMENT AND HAD NOT EVIDENCED A SETTLED PURPOSE TO RELINQUISH RIGHTS?

2. DID THE LOWER COURT ERR IN DETERMINING THAT TERMINATION OF RIGHTS WAS APPROPRIATE PURSUANT TO 23 Pa.C.S.A. 2511(a)(1), AS [Father] DID NOT EVIDENCE A SETTLED PURPOSE TO RELINQUISH RIGHTS?

3. DID THE LOWER COURT ERR IN DETERMINING THAT TERMINATION OF RIGHTS WAS APPROPRIATE PURSUANT TO 23 Pa.C.S.A. 2511(b), IN THAT TERMINATION WAS NOT IN THE CHILD[ren's] BEST INTEREST?

4. WAS COURT-APPOINTED COUNSEL INEFFECTIVE AT TRIAL?

***Anders*** Brief at 5.[5]

In reviewing an appeal from an order terminating parental rights, we adhere to the following standard:

> [A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. ***In re: R.J.T.***, 608 Pa. 9, 9 A.3d 1179, 1190 (Pa. 2010). If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. ***Id***.; ***R.I.S.***, 36 A.3d [567, 572 (Pa. 2011) (plurality opinion)]. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. ***Id***.; ***see also Samuel-Bassett v. Kia Motors America, Inc.***, [613] Pa. [371], 34 A.3d 1, 51 (2011); ***Christianson v. Ely***, 575 Pa. 647, 654, 838 A.2d 630, 634 (2003). Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. ***Id***.

***In re Adoption of S.P.***, 47 A.3d 817, 826-827 (Pa. 2012).

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. ***In re: R.N.J.***, 985 A.2d 273, 276 (Pa. Super. 2009). Moreover, we have explained:

> The standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue."

***Id***. (quoting ***In re J.L.C.***, 837 A.2d 1247, 1251 (Pa. Super. 2003)).

---

[5] For purposes of our discussion, we have renumbered the issues presented.

The termination of parental rights involves a bifurcated analysis, governed by Section 2511 of the Adoption Act, 23 Pa.C.S. § 2101 *et seq*.

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

In the matter *sub judice*, the orphans' court terminated Father's parental rights under sections 2511(a)(1), (2), (5), and (b), which provide as follows:

**§ 2511. Grounds for involuntary termination**

**(a) General rule**.--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

> (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

* * *

- 11 -

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

* * *

**(b) Other considerations**.--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(1), (2), (5), and (b).

This Court may affirm the orphans' court's decision regarding the termination of parental rights with regard to any one subsection of section 2511(a). *In re M.T.*, 101 A.3d 1163, 1179 (Pa. Super. 2014) (*en banc*). Because of Father's continued course of conduct and inability or unwillingness to remedy the situation, we focus our analysis on 23 Pa.C.S. § 2511(a)(2). *See In re N.A.M.*, 33 A.3d 95, 100 (Pa. Super. 2011) (observing that if we agree with the trial court's decision as to termination of

parental rights under any subsection of 23 Pa.C.S. § 2511(a), we need not address the remaining subsections).

The orphans' court addressed Father's actions and inaction leading up to the order terminating his parental rights as follows:

> [Father's] refusal to address and accept responsibility for his drug addiction and refusal to comply with a court-ordered treatment plan show a settled purpose of relinquishing his parental claim to the [C]hildren and that the conditions which led to the removal or placement of the [C]hildren cannot or will not be remedied.
>
> Though [Father] stated he "believed" he was in compliance with the court order requiring him to follow through with evaluations for Drug Treatment Court, Stairways [Behavioral Health], and a separate mental health evaluation, he also stated his lack of compliance was not his fault because the "whole situation" was not explained to him.
>
> Caseworker and probation officer testimony show this could not possibly have been the case. Both agencies indicated they went out of their way to make themselves available for consultation with [Father] and gave him as much guidance as they could to secure his compliance.
>
> Agency involvement began well before the [C]hildren were adjudicated dependent, in an effort to give [Father] every opportunity to succeed as a parent. Despite the efforts of probation and the agency, [Father] never obtained the assessments, and failed to complete even the bare minimum requirements of his treatment plan.
>
> [Father] also minimized and attempted to explain away his multiple incarcerations for drug use. He cited that at least one time he had a prescription for hydrocodone. Later, [Father] made the preposterous assertion that he tested positive for opiates because he accidentally drank the mother's breast milk which must have contained the drugs. *Involuntary Termination of Parental Rights Hearing Transcript, Day 1, 12/2/15, p. 66-67*. The record reflects that even if [Father] did have a valid prescription for hydrocodone, he was revoked from probation

- 13 -

and sentenced to [a state correctional institution] following at least his third relapse on opiates. *Involuntary Termination of Parental Rights Hearing Transcript, Day 1, 12/2/15, p. 32-33*.

During the age[n]cy's formal and informal involvement with this family, [Father] tested positive for heroin and morphine in September, 2013, late October and early November, 2014, and again in January, 2015. *Involuntary Termination of Parental Rights Hearing Transcript, Day 1, 12/2/15, p. 31-33, 46-47*. The last of these positive screens resulted in [Father's] probation revocation and sentence to a state correctional institution.

[Father's] contact with H.O. was "sporadic" even when he wasn't incarcerated, and due to his incarceration, [Father] has not seen his daughter, L.D., since she was one month old. By the time of the termination hearing, he had not seen his son for over one year and presented no testimony to indicate to this court he even tried to maintain contact with either child. *Involuntary Termination of Parental Rights Hearing Transcript, Day 2, 12/3/15, p. 16-19.*

In determining whether termination of parental rights is warranted, the trial court must "examine the totality of circumstances, and consider all explanations offered by the parents." However, the court must always "accord primary consideration to the needs and welfare of the children." *In the Interest of K.B.*, 763 A.2d 436, 439 (Pa. Super. 2000). [Father] made excuse after feeble excuse in a weak attempt to explain away circumstances leading to his incarceration and has refused to take responsibility for his actions. …

Orphans' Court Opinion, 5/12/16, at 9-11.

After review, we agree with the orphans' court and conclude that at nearly every turn, Father has failed to exhibit any indication of his desire to act as a parent thereby causing the Children to be without the essential parental care or control necessary for their well-being. While incarceration alone is not a "litmus test" for terminating parental rights, and while some incarcerated parents are willing and able to maintain a parental relationship

with their children,[6] Father has failed in this regard, both while incarcerated and while at liberty. The Children's lives "simply cannot be put on hold in the hope that [Father] will summon the ability to handle the responsibilities of parenting." *In re Z.P.*, 994 A.2d 1108, 1125 (Pa. Super. 2010). It is evident from a review of the record as a whole that the agency has met its burden of proof under section (a)(2). Accordingly, we conclude that there was no abuse of discretion in the trial court involuntarily terminating Father's parental rights to the Children pursuant to 23 Pa.C.S. § 2511(a)(2).

In his second issue, Father claims that the orphans' court erred in terminating his parental rights under 23 Pa.C.S. § 2511(a)(1). However, because we concluded that Father's parental rights were properly terminated under 23 Pa.C.S. § 2511(a)(2), we need not address this claim. *In re M.T.*, 101 A.3d at 1179; *In re N.A.M.*, 33 A.3d at 100.

In the third issue presented in the *Anders* brief, it is alleged that the orphans' court erred in concluding that it was in the best interests of the Children to terminate Father's parental rights. *Anders* Brief at 14. We disagree.

Our Supreme Court has stated:

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as

---

[6] *See In re Adoption of S.P.*, 47 A.3d at 830 (discussing incarceration as a factor in terminating parental rights).

love, comfort, security, and stability." ***In re K.M.***, 53 A.3d 781, 791 (Pa. Super. 2012). In ***In re E.M.***, [620 A.2d 481, 485 (Pa. 1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. ***In re K.M.***, 53 A.3d at 791.

***In re T.S.M.***, 71 A.3d 251, 267 (Pa. 2013).

The orphans' court set forth its section 2511(b) needs-and-welfare

scrutiny as follows:

> During his testimony, [Father] asserted he had a bond with his children, and it was therefore contrary to the [C]hildren's best interests to terminate his parental rights. The record flatly contradicts this assertion.

> [Father] last saw L.D. when she was one month old. [Father] acknowledged he probably had no bond with her. *Involuntary Termination of Parental Rights Hearing Transcript, Day 2, 12/3/15, p. 17*. Though [Father] claimed he provided care to H.O. for approximately three months of his life, at the time of the termination hearing, the [Father] had not seen H.O. for over a year, or one third of his life. *Involuntary Termination of Parental Rights Hearing Transcript, Day 1, 12/2/15, p. 86-89*. No evidence was presented to show [Father] attempted to maintain contact with the [C]hildren at any point prior to the filing of the petition to involuntarily terminate his rights. Though [Father] says he loves his children, his actions indicate otherwise. "A parent's own feelings of love and affection for a child do not prevent termination of parental rights." *See In re L.M.*, 923 A.2d 505, 512 (Pa. Super. 2007). Despite [Father's] feelings, it obvious to this court no bond existed between him and his children.

> Given [Father's] numerous relapses, this court remained unconvinced [Father] would be able to meet the needs of the [C]hildren. These needs are being met by the pre-adoptive family. The [C]hildren are now in a stable and secure environment where they are loved, and bonded with the family.

> *Involuntary Termination of Parental Rights Hearing Transcript, Day 1, 12/2/15, p. 96-98*.

Orphans' Court Opinion, 5/12/16, at 11-12.

We agree with the orphans' court's analysis; aside from Father's self-serving testimony, there is no indication that the Children are bonded with Father or that he contributes to their needs or welfare. The orphans' court's factual findings are supported by the record, and its legal conclusions are not the result of an error of law or an abuse of discretion. Accordingly, we agree with the orphans' court's analysis with regard to 23 Pa.C.S. § 2511(b).

In the fourth issue presented in the *Anders* brief, it is alleged that counsel was ineffective in representing Father in the termination proceedings. *Anders* Brief at 16. While counsel provides no argument on this point, because we are constrained to conduct an independent review of the record, we shall address the issue on that basis. *In re: S.M.B.*, 856 A.2d at 1237

"Pennsylvania statutes do not require counsel in termination proceedings, although Pennsylvania case law does, *In re Adoption of R.I.*, 455 Pa. 29, 312 A.2d 601 (1973), and flowing from this it is presumed that counsel would and should be effective." *In re Adoption of T.M.F.*, 573 A.2d 1035, 1040 (Pa. Super. 1990).

> In the context of a termination proceeding, the best approach ... is the fundamental fairness doctrine whereby, in the exercise of its broad scope of review, an allegation of ineffectiveness of counsel on appeal would result in a review by this Court of the total record with a determination to be made

- 17 -

whether on the whole, the parties received a fair hearing, the proof supports the decree by the standard of clear and convincing evidence, and upon review of counsel's alleged ineffectiveness, any failure of his stewardship was the cause of a decree of termination. Mere assertion of ineffectiveness of counsel is not the basis of a remand or rehearing, and despite a finding of ineffectiveness on one or more aspects of the case, if the result would unlikely have been different despite a more perfect stewardship, the decree must stand.

*T.M.F.*, 573 A.2d at 1044. As applied, the fundamental fairness standard in civil termination cases is more limited than the right to effective assistance of counsel in a criminal case. *In re J.T.*, 983 A.2d at 775. The party alleging ineffective assistance of counsel in a termination of parental rights case must show by clear and convincing evidence that it is more likely than not that the result of the proceeding would have been different, absent the alleged ineffectiveness. *In re K.D.*, 871 A.2d 823, 829 (Pa. Super. 2005).

After review we conclude, based on the overwhelming evidence in favor of terminating his parental rights, Father cannot establish by clear and convincing evidence that absent counsel's alleged ineffectiveness, the result of the hearing would have been different. Father's claim of ineffective assistance of counsel is frivolous.

Finally, we are mindful that once satisfied that counsel has complied with the *Anders* requirements, this Court undertakes an independent examination of the record to determine whether the appeal is wholly frivolous. *In re: S.M.B.*, 856 A.2d at 1237. However, our review of the record does not reveal any non-frivolous issues overlooked by counsel.

After a careful and independent review of the record, and identifying no other non-frivolous issues, we conclude that the orphans' court's findings are supported by the record, and it reasonably concluded that the elements of section 2511(a)(2) and (b) were met. We discern no abuse of discretion or error of law in this decision. Accordingly, we affirm the orphans' court's decree terminating Father's parental rights, and we grant counsel's petition to withdraw.

Decree affirmed. Petition to withdraw granted.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/10/2016