J-S33031-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: C.J.M., A MINOR | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: L.R., MOTHER | : : : : : : | |
| | : | No. 936 EDA 2021 |

Appeal from the Order Entered April 14, 2020
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s):  CP-51-DP-0000661-2019

| | | |
|---|---|---|
| IN THE INTEREST OF: C.M., A MINOR | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: L.R., MOTHER | : : : : : | |
| | : | No. 937 EDA 2021 |

Appeal from the Decree Entered April 14, 2021
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s):  CP-51-AP-0000158-2021

BEFORE:  BOWES, J., NICHOLS, J., and McLAUGHLIN, J.

MEMORANDUM BY McLAUGHLIN, J.:          **FILED DECEMBER 21, 2021**

L.R. ("Mother") appeals from the decree and order[1] entered April 14,

2020, which terminated her parental rights as to her three-year-old son,

_____

[1] Although Mother filed separate notices of appeal on the termination and adoption dockets, her brief does not raise any challenges to the goal change order.

C.J.M. ("Child").[2] Mother's counsel has filed an **Anders**[3] brief and motion to withdraw as counsel. Upon review, we grant counsel's motion to withdraw and affirm the decree and order.

Child was born in June 2018 and was two years old at the time of the termination hearing. N.T., 4/14/21, at 4. When Child was 10 months old, then-17-year-old Mother came to the Department of Human Services of Philadelphia ("DHS") and requested placement for herself and Child because she was overwhelmed, in mental distress, and feared that she might harm Child. **Id.** at 10. DHS received an order of protective custody ("OPC") and placed Child in a foster home. Child was adjudicated dependent on May 15, 2019. **See** Order of Adjudication, 5/15/19, at 1.

DHS filed a petition for involuntary termination on March 22, 2021. The court held a hearing on the petition in April 2021; Mother appeared and testified on her own behalf, although ultimately, the court found that her testimony was contradictory. N.T., 4/14/21, at 103. DHS presented the testimony of Janel McDowell, the social worker assigned to Mother's case, and S.F. ("Foster Mother").

---

[2] At the termination hearing, the DHS caseworker assigned to the matter indicated that Mother knew the identity of Child's father but refused to disclose it to DHS or the court. N.T., 4/14/21, at 29. The court terminated the parental rights to any unknown or putative father and no one claiming to be Child's father has filed an appeal in the instant matter.

[3] **See Anders v. California**, 386 U.S. 738 (1967), **Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009).

McDowell testified that Mother's objectives were to maintain contact with the community umbrella association ("CUA"); participate in intellectual disability services ("IDS"); participate in domestic violence counseling; participate in mental health treatment; participate in Achieving Reunification Center ("ARC") services for parenting, housing, and employment; maintain stable housing and employment; provide proof of income; participate in visitation with Child; participate in "family school." N.T. 4/14/21, at 11-12. Mother called McDowell only once between August 2020 and January 2021. *Id.* at 12-13. After January 2021, Mother was in more consistent contact. *Id.* at 13.

McDowell testified that Mother did not provide a residential address or schedule visits with Child. *Id.* Nor did Mother believe she needed IDS services and accordingly, refused to engage. McDowell had ongoing concerns with Mother's cognitive limitations and ability to care for Child. *Id.* at 14-15. Mother initially declined domestic violence services and, while she did schedule an appointment, it was not until the Tuesday before the termination hearing. *Id.* at 17-18. Mother had completed mental health services in 2017, prior to Child's entrance into care, but has not completed any mental health services since 2017. *Id.* at 20. Mother did complete parenting classes through ARC in November 2019, but did not complete housing or employment services, and did not have stable housing or employment at the time of the termination hearing. *Id.* at 21, 28. Mother did not complete her Family School intake until the day of the hearing. *Id.* at 26.

Although Mother was ordered to attend weekly supervised visits with Child, McDowell testified that she attended one visitation between May and December 2019. *Id.* at 26. Mother participated in six virtual visits with Foster Mother in 2020 but did not complete any agency or virtual visit in 2021. *Id.* at 27. Mother arrived 45 minutes late for her sole in-person visit with Child, and stayed for only 15 minutes. *Id.* at 34. McDowell testified she did not believe there was a parental bond between Mother and Child and Child would not suffer irreparable harm if separated from Mother. *Id.* at 30.

Foster Mother testified that Mother and Child had six or seven virtual visits because Mother would call at times Child was already asleep, despite being told the appropriate times to call. *Id.* at 83-84. Child refers to Foster Mother as "Mom," and at the last in-person interaction with Mother, Child did not recognize her. *Id.* at 85.

At the end of the hearing, the trial court granted the termination petition pursuant to 23 Pa.C.S.A. §§ 2511(a)(1), (2), and (b). This timely appeal followed.

Counsel's *Anders* brief identifies one issue:

> Did the trial court commit an error of law and abuse of discretion by involuntarily termination [Mother's] parental rights?

Mother's Br. at 2.

Before reviewing the merits of this appeal, we must first determine whether counsel has met the procedural requirements for withdrawing as

counsel. *See Commonwealth v. Goodwin*, 928 A.2d 287, 290 (Pa.Super. 2007) (*en banc*) (stating that "[w]hen faced with a purported *Anders* brief, this Court may not review the merits of any possible underlying issues without first examining counsel's request to withdraw").

In order to withdraw pursuant to *Anders*, counsel must: 1) petition the court for leave to withdraw stating that, after a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) furnish a copy of the brief to the client; and 3) advise the client that he or she has the right to retain other counsel or proceed *pro se*. *Commonwealth v. Cartrette*, 83 A.3d 1030, 1032 (Pa.Super. 2013) (*en banc*). The *Anders* brief must:

> (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Commonwealth v. Santiago*, 978 A.2d 349, 361 (Pa. 2009). If counsel meets all of the above obligations, "it then becomes the responsibility of the reviewing court to make a full examination of the proceedings and make an independent judgment to decide whether the appeal is in fact wholly frivolous." *Id.* at 355, n.5 (quoting *Commonwealth v. McClendon*, 434 A.2d 1185, 1187 (Pa. 1981)).

Instantly, we find that counsel has complied with all of the above technical requirements. In her **Anders** brief, counsel has provided a summary of the procedural and factual history of the case with citations to the record. Further, counsel's brief identifies two issues that could arguably support the appeal, and offers counsel's assessment of why the appeal is frivolous, with citations to the record. Counsel served Mother with a copy of the **Anders** brief and advised her of her right to proceed *pro se* or to retain a private attorney to raise any additional points she deemed worthy of this Court's review. Response to Order, 9/28/21, at 1. Mother has not responded to counsel's motion to withdraw. As counsel has met the technical requirements of **Anders** and **Santiago**, we will proceed to the issues counsel has identified.

The first issue noted in counsel's **Anders** brief relates to the effectiveness of counsel. Where an ineffective assistance of counsel claim is made in a termination of parental rights proceeding, this Court must determine:

> whether on the whole, the parties received a fair hearing, the proof supports the decree by the standard of clear and convincing evidence, and upon review of counsel's alleged ineffectiveness, any failure of his stewardship was the cause of a decree of termination. Mere assertion of ineffectiveness of counsel is not the basis of a remand or rehearing, and despite a finding of ineffectiveness on one or more aspects of the case, if the result would unlikely have been different despite a more perfect stewardship, the decree must stand.

**In re Adoption of T.M.F.**, 573 A.2d 1035, 1044 (Pa.Super. 1990).

Counsel does not identify any reason Mother might seek to raise such a claim beyond the fact that all parents have the right to do so in termination proceedings. ***Anders*** Br. at 9-10. An examination of the record does not reveal any further basis to claim that counsel's handling of the matter was the cause of the termination decree. ***Id.*** Accordingly, any ineffectiveness claim would be frivolous.

The final issue noted in counsel's ***Anders*** brief relates to the sufficiency of the evidence to meet the requirements of 23 Pa.C.S.A. § 2511(b). We review an order involuntarily terminating parental rights for an abuse of discretion. ***In re G.M.S.***, 193 A.3d 395, 399 (Pa.Super. 2018) (citation omitted). In termination cases, we "accept the findings of fact and credibility determinations of the trial court if they are supported by the record." ***In re T.S.M.***, 71 A.3d 251, 267 (Pa. 2013) (quoting ***In re Adoption of S.P.***, 47 A.3d 817, 826 (Pa. 2012)). "If the factual findings have support in the record, we then determine if the trial court committed an error of law or abuse of discretion." ***In re Adoption of K.C.***, 199 A.3d 470, 473 (Pa.Super. 2018). We will reverse a termination order "only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will." ***In re Adoption of S.P.***, 47 A.3d at 826.

A party seeking to terminate parental rights has the burden of establishing grounds for termination by clear and convincing evidence. ***In re Adoption of K.C.***, 199 A.3d at 473. Clear and convincing evidence means evidence "that is so clear, direct, weighty, and convincing as to enable the

trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue." ***Id.*** (internal quotation marks and citation omitted in original).

Termination of parental rights is controlled by Section 2511 of the Adoption Act. ***In re L.M.***, 923 A.2d 505, 511 (Pa.Super. 2007). Under this provision, the trial court must engage in a bifurcated analysis prior to terminating parental rights. The court must first find grounds for termination under Section 2511(a). "Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child." ***Id.*** One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond. ***Id.***

Here, the trial court found termination proper pursuant to subsections 2511(a)(1) and (2), as well as under Section 2511(b). With regard to Section 2511(b), counsel asserts that Mother could seek to bring a claim that there was "inadequate evidence of record to address the impact on the children of the severance of any bond that she shares with them." ***Anders*** Br. at 11.

Section 2511(b) provides:

> The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a

- 8 -

parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(b).

The focus under Section 2511(b) is not on the parent, but on the child. *In re Adoption of R.J.S.*, 901 A.2d 502, 508 (Pa.Super. 2006). Section 2511(b) requires the trial court to determine "whether termination of parental rights would best serve the developmental, physical and emotional needs and welfare of the child[.]" *In re C.M.S.*, 884 A.2d 1284, 1286-1287 (Pa.Super. 2005). This inquiry involves assessment of "[i]ntangibles such as love, comfort, security, and stability . . . ." *Id.* at 1287. The court must also examine the parent-child bond, "with utmost attention to the effect on the child of permanently severing that bond." *Id.*

However, the "mere existence of an emotional bond does not preclude the termination of parental rights." *In re N.A.M.*, 33 A.3d 95, 103 (Pa.Super. 2011). Rather, the trial court must consider whether severing the bond "would destroy an existing, necessary and beneficial relationship." *Id.* (citation and internal quotation marks omitted). The court must also examine any pre-adoptive home and any bond between the child and the foster parents*. In re T.S.M.*, 71 A.3d at 268. "In cases where there is no evidence of any bond

between the parent and child, it is reasonable to infer that no bond exists." *In re K.Z.S.*, 946 A.2d 753, 762–63 (Pa.Super. 2008).

At the termination hearing, the court observed that Mother had had at most eight to 10 visits in total with Child. N.T., 4/14/21, at 110. There was no evidence of any parent-child bond between Mother and Child, and that Child instead had a parent-child bond with Foster Mother, who has been his consistent parental figure since his placement. *Id.* While Child now seems to recognize his mother, he needed to be encouraged to interact with her by Foster Mother. *Id.* at 111. Thus, because there was no bond, there would be no detrimental impact to Child if Mother's rights were terminated. *Id.*

It is undisputed that Mother did not visit regularly with Child. In Mother's testimony, she stated only that she believed he recognized her and that attending Family School, which she had at that time failed to do, might improve the mother-child bond, and the caseworker testified that there was no parental bond between Mother and Child and Child would not suffer irreparable harm if separated from Mother. Any sufficiency challenge under Section 2511(b) would thus lack a reasonable basis in the record.

In sum, we find that the issues raised in counsel's *Anders* brief are wholly frivolous. Further, after an independent review of the record, we conclude that no other, non-frivolous issue exists. Therefore, we grant counsel's motion to withdraw. Having determined that the appeal is wholly frivolous, we affirm the decree terminating Mother's parental rights.

Motion to withdraw as counsel granted. Decree and order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/21/2021